John T. ALLEN et al.

v.

TERMINAL TRANSPORT CO., INC. et al.

UNITED STATES of America

v.

TERMINAL TRANSPORT CO., INC. et al.

Civ. A. Nos. 16687, 16761.

United States District Court,
N. D. Georgia,
Atlanta Division.

March 6, 1980.

Michael B. Trister, Thomas P. Carney, Jr., Justice Dept., Washington, D.C., for plaintiff.

Robert Beynart, Atlanta, Ga., for Terminal Transport.

HENDERSON, Circuit Judge, sitting by designation.

## ORDER

Presently pending in the above-styled case is the application of the private plaintiffs for attorneys' fees. To clarify the issues involved, a hearing on this matter was held on December 3, 1979.

In 1972, this class action was brought, on behalf of the Georgia applicants for employment and employees of Terminal Trans-

port Company (hereinafter referred to as "Terminal"), against Terminal and two union defendants, the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, and the Truck Drivers and Helpers Local Union No. 728. (The International and the Local are sometimes collectively referred to as "the unions.") The complaint alleged Terminal discriminated against black employees and applicants, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e *et seq.*, and section 1 of the Civil Rights Act of 1866, 42 U.S.C.A. § 1981. The action was consolidated, by order of the court, with a similar suit filed shortly afterwards by the United States on behalf of Terminal employees nationwide.

While pre-trial proceedings continued, the private plaintiffs, the government and Terminal negotiated and arrived at a settlement, designated as a Consent Decree in Partial Resolution of Suit, which was signed by the court on August 4, 1975. The union defendants did not participate in this settlement. Terminal agreed to pay $200,000.00 to various class members as back pay, to offer preferential employment opportunities to the class members, to hire blacks and whites in equal numbers for each of its facilities, and to modify other employment practices that had stood as obstacles to equal employment of blacks. The consent decree expressly reserved the issue of employee seniority for subsequent determination. The decree provided that "Terminal shall pay counsel for the named Plaintiffs in [the private class action] $9,000.00 as counsel fees and reimbursement of costs and expenses."

In August, 1975, a trial was held to decide the seniority issue. In January, 1976, the court found that Terminal had discriminated on the basis of race in the employment and assignment of drivers at its Atlanta Cartersville facility, in violation of Title VII and § 1981, and ruled that class members who were incumbent employees were entitled to compensatory seniority. The court originally refused to award seniority to those class members whom Terminal had refused to hire, but, following the Supreme Court's decision in *Franks v. Bowman Transportation Co., Inc.,* 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976), rejected applicants were awarded compensatory seniority on June 28, 1976.

After these orders issued, the parties began negotiations to determine the appropriate seniority relief for individual employees and applicants. Over the course of several years, the parties were able to reach agreement as to most employees, and the unresolved claims, together with other issues, were subsequently referred to a special master. The court adopted the special master's report and recommendations, with certain exceptions, on April 20, 1979.

Pursuant to the consent decree, several named plaintiffs and class members accepted employment as road drivers. Terminal treated these individuals as probationary employees for a period of thirty days, however, which had the effect of denying them the right to exercise their seniority in obtaining desirable job assignments. The plaintiffs brought this to the attention of the court, which directed the parties to try to resolve the question among themselves. After informal negotiations failed the questions were submitted to an employer-union grievance committee, which made a determination favorable to the plaintiffs on one issue only. The plaintiffs then brought the matter back to the court, and at a hearing held on June 1, 1979, Terminal agreed to provide most of the relief requested. Subsequently, the court held for the plaintiffs on the single remaining issue.

■ A threshold question is whether the August 4, 1975, consent decree operates to relieve Terminal of any liability for attorneys' fees.[1] The consent decree was discussed at the fee hearing, but the parties were unable to add anything beyond the terms of the agreement. The consent de-

---

1. The union defendants were not parties to the consent decree, and, therefore, it is irrelevant to their obligation to pay fees.

cree expressly stated that "[a]ll questions relating to seniority are reserved for future adjudication by this Court," and further that "Terminal expressly reserves the right to contest the granting of retroactive or preferential seniority to any class member." Consent Decree ¶ 33. In view of the language of the order and the substantial questions it reserved for later resolution, the court agrees with the plaintiffs that "it would be unreasonable to construe paragraph 36 as barring fees for later proceedings in the case," Private Plaintiffs' Memorandum in Support of Application for Attorney's Fees of July 17, 1979, at 6. Thus, although they may not recover for work respecting matters finally settled in the consent decree the plaintiffs are entitled to compensation for attorneys' fees for work on the August, 1975 trial. The plaintiffs have assured the court that any time claimed for the period 1972 through 1975 relates to this trial and not to matters covered by the consent decree. Private Plaintiffs' Reply Memorandum of September 5, 1979, at 2–3; Private Plaintiffs' Supplemental Memorandum of October 22, 1979, Trister Affidavit, at 4 ¶ 5.

■ The parties agree that the determination of reasonable attorneys' fees, which the private plaintiffs are entitled to recover under both section 706(k) of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e–5(k), and 42 U.S.C.A. § 1988 (1979 Supp.), should be guided by the standards articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *Johnson* recognizes that the award of attorneys' fees is to a great extent a matter of judgment, and that there is no way to lend "mathematical precision" to what is essentially a balancing process. 488 F.2d at 720. The request of

the plaintiff class is a conservative one, refreshingly so, and, all things considered, the court finds it eminently fair. The parties have not discussed the point, but the fee in this case was contingent in the most extreme sense of the word. Plaintiffs' counsel will recover no more than that awarded by this court, and had it been requested this consideration would have justified a serious notion of some augmentation of the award. *Foster v. Boise-Cascade, Inc.*, 577 F.2d 335, 336 (5th Cir. 1978) (Judge Vance dissenting in part); *Johnson*, 488 F.2d at 718 ¶ 6. The plaintiffs will be satisfied if they receive approximately what they have requested, so no multiplier has been applied, but this certainly means there is great latitude through which the award cannot be criticised by the defendants. This point having been emphasized, there follows a somewhat detailed analysis of some of the matters considered in computing the award. This discussion is also intended to show that those issues stressed by the defendants do not justify reduction of the award, but even if this were otherwise, the conservative amount requested, and granted, would still be appropriate.[2]

■ A proper first step under *Johnson* is to multiply the hours of work performed by a reasonable hourly rate,[3] to arrive at a base from which to work. The private plaintiffs have provided the data to perform this computation in their application of July 17, 1979, as supplemented by their memorandum of October 22, 1979. After reviewing the underlying facts, the court accepts as true and reasonable the following:

Compensable Time and Reasonable Rates

Michael Trister

1972–75    226 hours @ $60.00 = $13,560.00

---

2. The difficult questions involved in the present determination, abundance of briefs and the tenacity with which the defendants maintain their position are only typical of this litigation.

3. Terminal complains that the use of a single rate is inappropriate and that the court should use one rate for time spent in court, another for trial preparation and yet another for the remaining compensable time. The court finds, however, that the rates proposed by plaintiffs' counsel are reasonable, whether viewed as weighted rates or otherwise.

Compensable Time and Reasonable Rates

Michael Trister

| | | | | |
|---|---|---|---|---|
| 1976–77 | 170 hours | @ $75.00 | = | $12,750.00 |
| 1978–79 | 200 hours | @ $90.00 | = | 18,000.00 |

Thelma Wyatt Cummings

| | | | | |
|---|---|---|---|---|
| 1972–75 | 29.5 hours | @ $60.00 | = | $1,770.00 |
| 1976–77 | 11.5 hours | @ $75.00 | = | 862.50 |
| Expenses [4] | | | | $3,358.64 |
| | | | | $50,301.14 |

The award thus computed should be adjusted to reflect the several factors enumerated in *Johnson*. A consideration of the *Johnson* factors indicates that this award is extremely conservative.[5]

Some of the *Johnson* criteria require only brief comment. The court is satisfied that the plaintiffs' counsel went to great lengths to avoid duplicating the work of the government lawyers who were also involved in this case; a related issue is developed more fully below. While they cannot be described as novel, the issues involved in this case were difficult, and counsel was required to deal with a constantly changing law, especially in the areas of union liability and seniority. Plaintiffs' counsel brought great skill to bear on their tasks, and this skill was in no small part responsible for their success in negotiations and at trial. Both lawyers for the plaintiffs have extensive experience in civil rights cases, as their reputations reflect. Michael Trister may be said to have specialized in civil rights cases. Finally, counsel secured substantial non-pecuniary relief for the class and its individual members.

When this suit was brought, Trister was on the staff of the Washington Research Project, a public-interest law firm in Washington, D.C. He went into private practice in 1976, but continued to work on the case, for which the Research Project

reimbursed his firm, covering his out-of-pocket expenses and paying for his time at the rate of $30.00 per hour. At the attorneys' fee hearing Trister informed the court that all fees allocable to him would go to the Washington Research Project, and that he was "not getting a penny." The union defendants, in their brief of January 14, 1980, urge that since the Washington Research Project is not "a prevailing party" the court cannot award it fees. They argue that in any case fees should not be calculated on a basis of more than $30.00 per hour (the rate at which Trister was paid by the Washington Research Project) or greater than his salary during the period he worked for that organization. These contentions are without merit—it is settled that attorney's fees may be awarded for representation provided by public-interest firms, and that such awards are not limited to the amount the lawyers are paid by those organizations. *Harkless v. Sweeny Independent School District*, 608 F.2d 594 (5th Cir. 1979); *Northcross v. Board of Education of the Memphis City Schools*, 611 F.2d 624, (6th Cir. 1979); *Rodriguez v. Taylor*, 569 F.2d 1231, 1244–50 (3rd Cir. 1977), *cert. denied*, 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978); *EEOC v. Enterprise Association Steamfitters Local No. 638*, 542 F.2d 579, 592 (2d Cir. 1976), *cert. denied*, 430 U.S. 911, 97 S.Ct. 1186, 51 L.Ed.2d 588 (1977); *Tillman v. Wheaten-Haven Recreation Association*, 517 F.2d 1141, 1148 (4th Cir. 1975); *Thompson v. Madison County Board of Education*, 496 F.2d 682 (5th Cir. 1974); *Fairley v. Patterson*, 493 F.2d 598, 606 (5th Cir. 1974); *Miller v. Amusement Enterprises, Inc.*, 426 F.2d 534, 538–39 (5th Cir. 1970).

Much of the dispute over reasonable attorneys' fees for this case has centered on

---

4. These expenses are itemized in Exhibit 4 of the Private Plaintiffs' Supplemental Memorandum of October 22, 1979. The court is impressed with the plaintiffs' counsels' sincere efforts to limit these expenses. Such endeavors are not surprising, however, because when the expenditures were made counsel had no assurance that they would be compensated.

5. As stated, the court does not feel it is necessary to award more than the plaintiffs request,

even though a greater sum might be justified. The courts "do not have a mandate under Section 706(k) to make prevailing counsel rich." *Johnson*, 488 F.2d at 719. Granting substantially all they request should be enough to attract competent counsel "and to fairly place the economical burden of Title VII litigation." *Id.*

the question of whether the private plaintiffs were "prevailing parties" in the sense that term is used in the statutes authorizing attorney's fee awards, 42 U.S.C.A. § 2000e–5(k); 42 U.S.C.A. § 1988 (1979 Supp.). As an initial matter, the defendants, especially the local union, maintain the private plaintiffs did not "prevail," since only one of the four Georgia class members with seniority claims won before the special master. However, most of the claimed fees relate to the trial, which vindicated the plaintiffs' rights. Moreover, most of the issues not determined in the consent decree were settled through negotiations among the parties, and even before the special master the private plaintiffs prevailed on such issues as the burden of proof and the reemployment rights of former employees.

■ This litigation began only after Terminal had engaged in discriminatory employment practices. The plaintiffs are entitled to recover attorneys' fees for ending the discrimination, and thus they may recover for the work that caused Terminal to settle several issues. *Iranian Students Association v. Edwards*, 604 F.2d 352 (5th Cir. 1979); *Dawson v. Pastrick*, 600 F.2d 70, 78 (7th Cir. 1979); *Bonnes v. Long*, 599 F.2d 1316, 1318 (4th Cir. 1979); *Ross v. Horn*, 598 F.2d 1312, 1322 (3rd Cir. 1979); *Nadeau v. Helgemoe*, 581 F.2d 275, 278–81 (1st Cir. 1978); *Foster v. Boorstin*, 182 U.S.App.D.C. 342, 345, 561 F.2d 340, 343 (D.C.Cir.1977); *Brown v. Culpepper*, 559 F.2d 274, 277 (5th Cir. 1977); *Parham v. Southwestern Bell Telephone Co.*, 433 F.2d 421, 429–30 (8th Cir. 1970). The court finds as a fact, and it has never been open to serious question, that Terminal would not have discontinued its practices except for the effective pressure of private plaintiffs' counsel.

The plaintiffs succeeded in achieving most of the remedies they sought, in the sense that Terminal eventually did what the plaintiffs asked, but there were some individual claims that were not entirely successful, and some requested relief was denied, in particular injunctive relief against the unions for compensatory seniority predating the enactment of Title VII. Unfortunately, in the context of this case it is impossible to allocate the attorney's efforts to the various successful and unsuccessful claims. The plaintiffs generously suggest that their request might be reduced by up to ten percent to reflect the fact that their claims for back pay against the unions were unsuccessful and their failure to achieve the full seniority they sought for a small number of class members. Private Plaintiffs' Supplemental Memorandum of October 22, 1979, at 4 n. *. Such an adjustment is unnecessary.[6]

Statutory provisions for attorneys' fees provide for the award to the prevailing parties, and do not limit it to compensation for the specific claims won by such parties. There is no contention that the issues on which the defendants were eventually successful were frivolously raised by the plaintiff class.[7] The major issues on which the plaintiffs ultimately lost were their claims for back pay and retroactive seniority against the union, which were finally determined by the Supreme Court's decision in *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977).

Once again, *Johnson* provides guidance on how to deal with the question of fees for issues unsuccessfully pursued by plaintiffs who are successful in the litigation taken as a whole. "The statute was not passed for the benefit of attorneys but to enable litigants to obtain competent counsel worthy of a contest with the caliber of counsel available to their opposition and to fairly place the economical burden of Title VII litigation. Adequate compensation is neces-

---

**6.** Again, since the plaintiffs have not requested that their award be multiplied by a contingency factor, the determination is, within a wide range, a fair one.

**7.** Consequently, the unions' request that the plaintiffs be taxed for the unions' attorneys'

fees is groundless. *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 419, 423, 98 S.Ct. 694, 699, 701, 54 L.Ed.2d 648, 655–58 (1978). Nor is it appropriate to allow the unions to recover their costs from the plaintiffs in this case.

sary, however, to enable an attorney to serve his client effectively and to preserve the integrity and independence of the profession." *Johnson*, 488 F.2d at 719–20. All of the efforts of plaintiffs' attorneys were necessary and warranted in light of the law at that time. Indeed, as they note, plaintiffs' counsel would have been remiss in their duties as representatives of the class had they not pressed all these allegations. The defendants are responsible for the situation that developed into this action, and in fairness to the plaintiff class and their counsel, the defendants must bear the burden of this litigation.

■ While the results obtained must be considered, *Johnson*, 488 F.2d at 718 ¶ 8, fee-paying clients do not receive a discount when their attorneys are unsuccessful on relatively minor aspects of the litigation. Especially where, as here, it is impossible to allocate time among successful and unsuccessful claims and the plaintiffs have prevailed in the greater part of their case, time spent in good faith on the preparation and pursuit of unsuccessful claims should not be excluded in computing the fee award. *But cf. Nadeau v. Helgemoe*, 581 F.2d 275, 279 (1st Cir. 1978) (fee should only reflect work on successful issues, at least where they do not "dominate" litigation). As the Sixth Circuit has held,

> The question as to whether the plaintiffs have prevailed is a preliminary determination, necessary before the statute [42 U.S.C.A. § 1988] comes into play at all. Once that issue is determined in the plaintiffs' favor, they are entitled to recover attorneys' fees for "all time reasonably spent on a matter," . . . So long as the party has prevailed on the case as a whole the district courts are to allow compensation for hours expended on unsuccessful research or litigation . . . . There are numerous practical reasons why a court may not be permitted to dissect a law suit into "issues and parts of issues as to which the plaintiffs did not prevail," . . .

*Northcross v. Board of Education of the Memphis City Schools*, 611 F.2d 624 at 636 (6th Cir. 1979).

■ The United States brought its pattern-or-practice suit soon after the private plaintiffs filed theirs. The defendants now insist that no attorneys' fees should be awarded to the private plaintiffs, since their work necessarily duplicated that performed by the government. This argument, once again, is without merit. The court is satisfied that counsel for the private plaintiffs made every effort to avoid duplicating the work of the government,[8] and thus the presence of the government saves the defendants a great deal of money. Even if there had been duplication, the court would be reluctant to allow Terminal to benefit from the fact that not only private plaintiffs, but also the government brought suit. In any case, the plaintiffs were the first to initiate suit, and once they did so their counsel were under a duty, especially great in a class action, to represent thoroughly the interests of their clients. The pendency of similar civil rights actions should not and does not prevent an attorneys' fee award to successful plaintiffs. *Nadeau v. Helgemoe*, 581 F.2d 275, 281 (1st Cir. 1978); *United States v. Georgia Power Co.*, 474 F.2d 906, 927 (5th Cir. 1973) (private Title VII actions consolidated with action brought by United States).

Next, it is necessary to determine who should pay the award of $50,301.14 in attorneys' fees and expenses. Specifically, the court must decide whether the unions are liable for a portion of the award.

One of the plaintiff class' major contentions was that the unions' seniority system perpetuated the results of Terminal's discrimination by protecting the seniority rights of drivers who had been employed while Terminal was still discriminating against black applicants. At one point the court held the unions were liable for the effects of the seniority system, and awarded job-category seniority retroactive to the date of employment. This order was vacated only after the Supreme Court decided

---

**8.** See note 4, *supra*.

*Teamsters,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). In *Teamsters,* the Court held that in passing Title VII, Congress had immunized unions from damages resulting from a bona fide seniority system, and that seniority awards could only date from the passage of the 1964 Civil Rights Act. Accordingly, in December, 1977, the court vacated its prior orders to the extent that they set seniority dates prior to the date of passage of the Civil Rights Act or allowed members of the plaintiff class to recover back pay from the unions. It was then necessary to adjust the seniority dates of several class members, and the unions remained parties to the action in order that complete relief might be provided. Fed.R. Civ.P. 19(a); *see also Teamsters,* 431 U.S. at 357 n. 43, 97 S.Ct. at 1865 n. 43, 52 L.Ed.2d at 428 n. 43. Of course, the court did make seniority retroactive to the effective date of the Civil Rights Act or employment subsequent thereto. *Franks v. Bowman Transportation Co., Inc.,* 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976).

While the thrust of this suit was against Terminal, and even though after the decision in *Teamsters* it appeared that no relief would be ordered against them, the unions apparently felt they had a real and significant interest in the outcome of the cases. They determined to protect this interest by assuming for themselves an active role. Hence, in the negotiations following entry of the consent decree the unions often carried the laboring oar, in some cases to the exclusion of Terminal. They participated fully in negotiations over the extent of the retroactive seniority for individual class members, and at hearings before the special master.[9] Even in the proceedings to determine attorneys' fees they played an active part, often raising issues not mentioned by Terminal and briefing matters that have no bearing on the unions' liability for fees, such as the fee provision of the consent decree.

A fair allocation of these fees requires that Terminal pay two-thirds, and the unions the remaining third.[10] *Compare, Moten v. Bricklayers, Masons and Plasterers,* 177 U.S.App.D.C. 77, 93, 543 F.2d 224, 240 (D.C.Cir.1976). The issue of union liability for attorneys' fees is difficult in part because it is likely, though by no means sure, that had the unions not been party, Terminal would have raised many of the issues it left to the unions. Thus, if it is error to hold the unions for part of these fees, Terminal should be liable for the entire award. However, Terminal was often cooperative, and had the unions not been so steadfast in their opposition this controversy might have ended sooner.

The unions point out that in both *Teamsters,* and *United States v. East Texas Motor Freight Systems, Inc.,* 564 F.2d 179, 183 (5th Cir. 1977), there is language to the effect that there can be no monetary award against unions in Title VII cases. However, these two cases, *East Texas Motor Freight* following *Teamsters,* merely held that back pay could not be awarded against a union, and it is clear that attorneys' fees are a different question. *Cf. Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978) (attorneys' fees could be awarded against the state, even though damages could not). The unions are correct in pointing out that in *Teamsters* the Court interpreted the Civil Rights Act to evidence a congressional intent that unions be immune from damages arising from bona fide seniority systems. Hence, the unions have committed no actionable wrong here, and *Hutto* is distinguishable, since in that case it was clear that Arkansas had unlawfully operated its penitentiaries, but was simply immune from an award of damages therefor. However, fees are not being taxed against the unions because the seniority system perpetuated discrimination, albeit

---

9. For a summary of the post-settlement activities of the unions and Terminal, see Private Plaintiffs' Supplemental Memorandum of October 22, 1979, at 3–4; Government Plaintiffs' Memorandum of July 16, 1979, at 2 n. 2.

10. Both the unions and Terminal have opposed the grant of any award, but no party has suggested a proper allocation of liability for an award granted against all defendants.

innocently; rather they participated substantially in opposing the legitimate demands of the plaintiff class, so the unions should share the costs to the class.

Two cases from other circuits support the proposition that attorneys' fees in a Title VII case may be assessed against those who, while innocent of any illegal discrimination, erected substantial obstacles that the plaintiffs had to overcome in resisting such discrimination. In *Moten v. Bricklayers, Masons and Plasterers, supra,* 177 U.S. App.D.C. 77, 92, 543 F.2d 224, 239 (D.C.Cir. 1976), the court awarded fees against a contractors' association that had not been a party to the Title VII suit brought by a class of employees against the unions that refused to represent them. The unions assert that *Moten* is distinguishable because the association had not been an original party in the action. However, the *Moten* court awarded damages despite this fact, and the distinction found by the unions cuts against them here: "But the Association purported to become a party appellant when it filed its appeal, and the plaintiffs were compelled to defend against its efforts in order to maintain their hard-won settlement agreement. This is not a situation in which the court is being asked to enter an award against a person which has in no way entered its name upon the court records." *Id.* 177 U.S.App.D.C. at 92, 543 F.2d at 239.[11]

Similarly, in *Haycraft v. Hollenbach,* 606 F.2d 128 (6th Cir. 1979), the court held that under the 1972 Emergency School Aid Act, 20 U.S.C.A. § 1617, attorneys' fees could be awarded against a county judge who intervened in a school desegregation case to offer a desegregation plan eventually rejected by the district court. "That [the judge] was not a principle defendant in the litigation, although a factor to be considered by the court, is not determinative of the propriety of an assessment of attorneys' fees against him. The alternative desegregation plan proposed by [the county judge]

imposed a substantial barrier to the realization of the full constitutional rights of" the plaintiffs. At 132. Notwithstanding the present arguments of the unions to the contrary, the actions of the labor defendants compelled the plaintiff class to defend its settlement and intensify its efforts for further relief.

As a final matter, the United States suggests that it would be premature to dissolve the consent decree. Terminal does not oppose, and, in any case, the position of the government is well taken, and the decree will remain in effect.

---

11. The opinion in *Moten* also observed that it is difficult to allocate liability for the fees in a case such as this, and while noting that any allocation is subject to appellate review, the court held that liability was not limited to the incremental costs occasioned by the activities of the association (or, by analogy, the unions). 177 U.S.App.D.C. at 93, 543 F.2d at 240.