UNITED STATES of America, Equal Employment Opportunity Commission and Willie Beasley, Plaintiffs-Appellees,

v.

TERMINAL TRANSPORT CO., INC., Defendant,

and

International Brotherhood of Teamsters, Chauffeurs, etc., Defendants-Appellants.

John T. ALLEN et al., Plaintiffs,

John T. Allen and Willie Beasley, Plaintiffs-Appellees,

v.

TERMINAL TRANSPORT CO., INC., Defendants,

and

International Brotherhood of Teamsters, Chauffeurs, etc., Defendants-Appellants.

No. 80–7386.

United States Court of Appeals, Fifth Circuit. Unit B

Aug. 21, 1981.

Rehearing Denied September 18, 1981.

L. N. D. Wells, Jr., Dallas, Tex., Frederick C. McLam, Decatur, Ga., for International Brotherhood of Teamsters, etc.

Thomas P. Carney, Jr., Fed. Enforcement Sec., Civil Rights Div., Dept. of Justice, Washington, D. C., for United States.

Justine S. Lisser, Lutz Alexander Prager, Washington, D. C., for E. E. O. C.

Michael B. Trister, Washington, D. C., for John T. Allen et al.

Robert W. Beynart, Atlanta, Ga., for Terminal Transport Co., Inc.

Before MILLER,* Judge, and FRANK M. JOHNSON, Jr. and THOMAS A. CLARK, Circuit Judges.

MILLER, Judge:

This is an appeal by the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America and Truck Drivers and Helpers Local Union No. 728 ("unions") from that part of the final judgment of the district court directing that the unions pay $2,256, representing

* Judge of the United States Court of Customs and Patent Appeals, sitting by designation.

one-half the fees and expenses of a special master, and $16,767.05, representing one-third of the district court's award of attorneys' fees to John T. Allen, et al. ("Private Plaintiffs"); also, denying the unions' claim for costs and attorneys' fees against plaintiffs.[1] The underlying consolidated actions by Private Plaintiffs and the United States[2] ("government") were brought against Terminal Transport Company, Inc. ("Terminal"), and the unions[3] under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) and 42 U.S.C. § 1981.

### BACKGROUND

The Private Plaintiffs' suit was filed in 1972 by eleven present and past employees of Terminal as a class action. They alleged that Terminal and the unions had discriminated against blacks at Terminal's Georgia facilities on the basis of race in hiring, assignment, promotion, and seniority. Shortly thereafter, the government filed its suit under section 707 of Title VII (42 U.S.C. § 2000e–6)[4] alleging that the defendants had engaged in a pattern and practice of racial discrimination at Terminal's facilities nationwide.

On August 4, 1975, Terminal, the government, and Private Plaintiffs entered into a "Consent Decree in Partial Resolution of Suit," approved by the court. The unions were not parties to this agreement. Under the agreement, Terminal was to provide back pay of $200,000 and preferential job opportunities to one hundred and forty-five persons (another twenty-three persons were subsequently added in 1977) and was to modify its employment practices. Private Plaintiffs were awarded $9,000 for attorneys' fees and costs for negotiating the settlement.

The issue of seniority relief for black employees and applicants for employment was reserved for an evidentiary hearing before the court. At the hearing, the unions sought to show that neither they nor Terminal were in violation; Terminal offered no evidence on the issue. On January 21, 1976, the court held that both Terminal and the unions had violated Title VII and that black employees and applicants for employment were entitled to seniority relief and back pay from the unions.[5] In December of 1977, the court modified its previous order to comply with *Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), decided earlier that year, and held that, in view of *Teamsters*, seniority could not be made retroactive to before the effective date of Title VII and that the unions had not violated Title VII (because their seniority plan was *bona fide*) and were, therefore, not liable for back pay. The court, nevertheless, retained the unions as Rule 19(a), F.R.Civ.P., parties "in order to provide complete relief."

---

1. The opinion of the district court is reported at 486 F.Supp. 1195 (1980).

2. The Equal Employment Opportunity Commission ("EEOC") was subsequently added as a party plaintiff.

3. The government's action did not name any Teamster locals as defendants but did name the International Association of Machinists, which filed an agreement with the court to not defend the suit and to abide by all orders of the court.

4. In pertinent part, section 707 provides:
   (a) Whenever the Attorney General has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by this subchapter, and that the pattern or practice is of such a nature and is intended to deny the full exercise of the rights herein described, the Attorney General may bring a civil action in the appropriate district court of the United States . . . .
   . . . .
   (c) Effective two years after March 24, 1972, the functions of the Attorney General under this section shall be transferred to the [Equal Employment Opportunity] Commission . . . .

5. The court made no finding with respect to the alleged violations of 42 U.S.C. § 1981. Initially it ordered no seniority relief for applicants for employment, but this order was amended to provide such relief in view of *Franks v. Bowman Transportation Co.*, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976), decided two months later, which held that an award of seniority retroactive to the date of the job application is appropriate under section 706(g) of Title VII.

The principal issue then remaining involved the seniority dates for class members entitled to relief under *Franks* and *Teamsters, supra.* Plaintiffs proposed retroactive seniority dates for forty-six eligible class members, all of which were challenged by the unions. Following negotiations, the parties reached an agreement on thirty-three of these, and the remaining thirteen seniority claims were referred to a special master, along with questions of burden of proof with respect to vacancies and the use of retroactive seniority in bidding against laid-off employees.[6] Plaintiffs prevailed on nine of the thirteen claims and also prevailed, over opposition by the unions, on the questions of burden of proof and priority of seniority.

## OPINION

*Attorneys' fees*

█ The unions' principal argument over the taxation against them of one-third of the attorneys' fees awarded the Private Plaintiffs is that the unions were the "prevailing parties" in the litigation[7] and that the government misstates the issue by saying that "plaintiffs prevailed over the unions' determined opposition by winning substantial rightful place seniority relief." They point to "The Teamsters' Position" set forth in their post-trial brief before the district court, filed November 20, 1975,[8] as evidence that the unions had been urging rightful place within a *bona fide* seniority system throughout the lawsuit" and assert that the unions "prevailed in this position"; whereas, the court *denied* plaintiffs' claim that all class members should be awarded classwide "carryover seniority" and that the unions should pay back pay.

However, the self-serving "Position" of the unions is neither an accurate nor a complete picture of events running through the hearing before the special master in December of 1978. As found by the district court, 486 F.Supp. at 1202–03:

> While the thrust of this suit [following the consent decree of August 4, 1975] was against Terminal, and even though after the decision in *Teamsters* it appeared that no relief would be ordered against them, the unions apparently felt they had a real and significant interest in the outcome of the cases. They determined to protect this interest by assuming for themselves an active role. Hence, in the negotiations following entry of the consent decree the unions often carried the laboring oar, in some cases to the exclusion of Terminal. They participated fully in negotiations over the extent of the

6. Also referred to the special master were two claims involving termination of employment.

7. Indeed, this is the premise on which the unions argue that they should have been awarded costs and attorneys' fees against the plaintiffs.

8. That position is stated as follows:
   IBT asserts that IBT has not participated in, and is not chargeable with, Terminal's discrimination; ... moreover, both IBT and Local 728 say that the agreements were established pursuant to NLRB determination, are nondiscriminatory, lawful, apply equally to all races, and should not be altered.
   This is not to say that IBT seeks to block any actions necessary to remedy Terminal's violations.
   Specifically, Teamsters from the inception of this litigation have agreed and now reiterate that minority employees of Terminal who have been denied employment as over-the-road employees on the basis of race should be permitted to fill future over-the-road vacancies on a terminal basis with job bidding and lay-off seniority within the over-the-road

bargaining unit from the date of such discrimination against them.
   Both IBT and Local 728 do oppose any award of fictional seniority to minority employees solely on the basis of race, absent a showing that such individual employees have individually been discriminatorily denied road employment.
   Teamsters say that upon a finding that Terminal has discriminated on account of race, any individuals damaged by the discrimination should be placed in the "rightful place" each would have occupied but for Terminal's discrimination....
   This, however, cannot be ascertained until it is shown: (1) that Terminal discriminated in hiring on account of race, (2) that specific individuals were damaged thereby and (3)(a) that each specific individual opted for a job which Terminal denied him; (b) that he was then qualified to hold such job; and (c) that there was a vacancy which was denied him....

retroactive seniority for individual class members, and at hearings before the special master. Even in the proceedings to determine attorneys' fees they played an active part, often raising issues not mentioned by Terminal and briefing matters that have no bearing on the unions' liability for fees, such as the fee provision of the consent decree.

A fair allocation of these fees requires that terminal pay two-thirds, and the unions the remaining third.... The issue of union liability for attorney's fees is difficult in part because it is likely, though by no means sure, that had the unions not been party, Terminal would have raised many of the issues it left to the unions. Thus, if it is error to hold the unions for part of these fees, Terminal should be liable for the entire award. However, Terminal was often cooperative, and had the unions not been so steadfast in their opposition this controversy might have ended sooner.

... However, fees are not being taxed against the unions because the seniority system perpetuated discrimination, albeit innocently; rather they participated substantially in opposing the legitimate demands of the plaintiff class, so the unions should share the costs to the class. [Footnotes omitted.]

As to the "prevailing party" issue, the district court found, 486 F.Supp. at 1200:

The plaintiffs succeeded in achieving most of the remedies they sought, in the sense that Terminal eventually did what the plaintiffs asked, but there were some individual claims that were not entirely successful, and some requested relief was denied, in particular injunctive relief against the unions for compensatory seniority predating the enactment of Title

VII. Unfortunately, in the context of this case it is impossible to allocate the attorney's efforts to the various successful and unsuccessful claims....

Statutory provisions for attorneys' fees provide for the award to the prevailing parties, and do not limit it to compensation for the specific claims won by such parties. There is no contention that the issues on which the defendants were eventually successful were frivolously raised by the plaintiff class. The major issues on which the plaintiffs ultimately lost were their claims for back pay and retroactive seniority [to prior to enactment of Title VII of the Civil Rights Act of 1964] against the union, which were finally · determined by the Supreme Court's decision in [*Teamsters supra*].[9] [Footnote omitted.]

Based on the record before us, the findings of the district court cannot be said to be clearly erroneous; nor can the further findings of the court, citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), that the efforts of Private Plaintiffs' attorneys were necessary and warranted in light of the law at the time; that said attorneys would have been remiss in their duties had they not pressed all of the allegation; that the skill of said attorneys was in no small part responsible for success in negotiations and at trial; and that the defendants were responsible for the situation that developed into the action, and in fairness to the plaintiff class and their counsel, the defendants must bear the burden of the litigation.[10] We are satisfied that the court correctly determined that the unions, as Rule 19(a) parties, were liable for a fair share of the attorneys' fees in view of the nature and extent of their litigation and negotiation efforts, particularly where

---

**9.** The unions would appear to equate the Supreme Court's decision in the unrelated case of *Teamsters, supra*, with what they term their "successful effect to block plaintiffs' raid on the union treasury through baseless claims of union backpay liability."

**10.** We are persuaded that the district court, citing *Northcross v. Board of Education of the Memphis City Schools*, 611 F.2d 624, 636 (6th

Cir. 1979), reasonably concluded that "where, as here, it is impossible to allocate time among successful and unsuccessful claims and the plaintiffs have prevailed in the greater part of their case, time spent in good faith on the preparation and pursuit of unsuccessful claims should not be excluded in computing the fee award." 486 F.Supp. at 1201.

these efforts were identified with Terminal's interests. It follows that the unions' claim for costs and attorneys' fees against the plaintiffs must fail. *See Christiansburg v. Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978).

■ As they did before the district court, the unions argue that no attorneys' fees should be awarded the Private Plaintiffs because, due to the government's action (filed after and consolidated with the private action), there was no necessity for the private action. The district court found this argument to be "without merit," stating that it was "satisfied that counsel for the private plaintiffs made every effort to avoid duplicating the work of the government, and thus the presence of the government saves the defendants a great deal of money." [11] (Footnote omitted.) 486 F.Supp. at 1201. It said, and we agree, that plaintiffs' counsel "were under a duty, especially great in a class action, to represent thoroughly the interests of their clients" and that the pendency of similar civil rights actions "does not prevent an attorneys' fee award to successful plaintiffs," citing *Nadeau v. Helgemoe,* 581 F.2d 275, 281 (1st Cir. 1978), and *United States v. Georgia Power Co.,* 474 F.2d 906, 927 (5th Cir. 1973). Indeed, the union tacitly agrees in saying:

> For the statute allows discretion in awarding attorneys fees to prevailing parties *"other than the [EEO] Commission and the United States."* § 706(k) [Civil Rights Act of 1964, 42 U.S.C. § 2000e–5k], 42 U.S.C. § 1988.

Moreover, it is recognized that individual employees *may* be permitted to intervene where the government has brought a prior pattern or practice action under section 707. *United States v. City of Jackson,* 519 F.2d 1147, 1151 (5th Cir. 1975). And individual employees have the right to intervene in actions brought by the EEOC under section 706. Accordingly, we are persuaded that, if Congress had intended that Private Plaintiffs' attorneys' fees not be permitted when private and government actions are consolidated, it would have specifically so provided—just as it did in section 706(k) with respect to attorneys' fees of the EEOC and the United States.

*Costs of special master*

■ In opposing the district court's taxation of one-half the special master's fees and expenses to them, the unions make the point that only one of the four Georgia class members with seniority claims won before the special master. However, the district court correctly found that the Private Plaintiffs "prevailed on such issues as the burden of proof and the reemployment rights of former employees." Moreover, of the fifteen claimants before the special master, he awarded relief to nine (including the one Georgia class member) and denied relief to six (including the other three Georgia claimants).[12] That plaintiffs were not successful on all claims does not defeat their status as prevailing parties or the taxation of cost of the special master to Terminal and the unions. *Carpa v. Ward*

11. In a footnote, the court referred to itemized expenses of Private Parties' counsel (covering copying, long distance phone calls, travel, express mail, and messenger service) and said it was "impressed with the plaintiffs' counsels' sincere efforts to limit these expenses." It said that the request of the plaintiff class for attorneys' fees and expenses ($50,301.14) "is a conservative one, refreshingly so, and, all things considered, the court finds it eminently fair." The court further said:

> [M]ost of the issues not determined in the consent decree were settled through negotiations among the parties . . . .
> This litigation began only after Terminal had engaged in discriminatory employment practices. The plaintiffs are entitled to recover attorneys' fees for ending the discrimi-

nation, and thus they may recover for the work that caused Terminal to settle several issues. . . . The court finds as a fact, and it has never been open to serious question, that Terminal would not have discontinued its practices *except for the effective pressure of private plaintiffs' counsel.*

There is ample evidence in the record supporting the above findings, which reflect a reasonable balancing of the relevant factors set forth in *Johnson v. Georgia Highway Express, Inc., supra.*

12. As earlier related, thirteen of the fifteen claims had to do with retroactive seniority and the other two claims involved termination of employment.

*Foods*, 567 F.2d 1316, 1323–24 (5th Cir. 1978). *See also Jones v. Diamond*, 594 F.2d 997, 1028 (5th Cir. 1979).

 In view of the foregoing, we hold that the district court did not abuse its discretion in its award of attorneys' fees and costs of the special master against the unions and in its denial of the unions' claim for costs and attorneys' fees against the plaintiffs.[13]

The case is REMANDED for a determination of additional costs and attorneys' fees attributable to this appeal to be awarded Private Plaintiffs-appellees. The judgment of the district court is otherwise AFFIRMED.

---

**13.** Even when a plaintiff fails to prevail in any respect, as was not the case here, the district court may decline to award costs to the defend-
ants. *Delta Airlines, Inc. v. August*, 450 U.S. 346, 352, 101 S.Ct. 1146, 1150–51, 67 L.Ed.2d 287 (1981).