AIR LINE STEWARDS AND STEWARDESSES ASSOCIATION, LOCAL 550, TWU, AFL–CIO, et al., Plaintiffs,

v.

TRANS WORLD AIRLINES, INC., Defendants.

Anne B. ZIPES, et al., Plaintiffs,

v.

AIR LINE STEWARDS AND STEWARDESSES ASSOCIATION, LOCAL 550, TWU, AFL–CIO and Trans World Airlines, Inc., Defendants.

Nos. 70 C 2071, 74 C 2063.

United States District Court, N.D. Illinois, E.D.

July 16, 1986.

See also 763 F.2d 875.

---

## ORDER

ROSZKOWSKI, District Judge.

Before the court are attorneys' fee petition by counsel for both Class A and B plaintiffs. Counsel for Class A plaintiffs seek $57,288 in fees from the Independent Federation of Flight Attendants ("IFFA"). Counsel for Class B plaintiffs seek $177,725 in fees [1] from the IFFA and $73,711.85 from defendant Trans World Airlines, Inc. ("TWA"). For the reasons stated herein, Class A plaintiffs' fee petition is granted in its entirety. IFFA is ordered to reimburse the settlement fund $57,258, the amount of Class A attorneys' fees. Class B plaintiffs' petition for fees is denied as to TWA and granted as to IFFA.

## I. BACKGROUND

This extremely complex case was brought as a challenge to TWA's practice of routinely discharging pregnant stewardesses.[2] Sex discrimination charges were filed with the EEOC in June of 1970. The charges were filed by several TWA stewardesses who had fallen victim to TWA's discriminatory practice and by their former collective bargaining representative, the Air Line Stewards and Stewardesses Association ("ALSSA"). In August, 1970, after the EEOC proceedings were completed, this action was filed pursuant to Title VII

---

1. Including $5,978 in out-of-pocket expenses.

2. American Airlines, Inc. had a similar practice and was at one time a defendant in this action. American's involvement in this case is irrelevant to the instant fee petition.

of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*[3]

The case was brought as a class action on behalf of (1) all stewardesses who had suffered a pregnancy-based firing after July 2, 1965 (the effective date of Title VII); and, (2) all then-employed stewardesses who might become pregnant. The named plaintiffs were ALSSA and the terminated stewardesses who had filed with the EEOC. The complaint sought reinstatement, retroactive seniority and backpay for those class members who had been fired and an injunction against future pregnancy-based firings for the then-employed stewardesses.

In October 1970, ALSSA entered into a collective bargaining agreement with TWA that eliminated future pregnancy-based discharges.

In September of 1971, TWA and ALSSA reached an agreement designed to settle this case. The agreement provided that previously terminated stewardesses could return to work as openings occurred. The agreement abandoned the claims for retroactive seniority and backpay. Despite the objections of various class members, Judge Perry approved this settlement agreement on March 17, 1972.

The dissatisfied class members appealed entry of the settlement order and on September 11, 1973, the Seventh Circuit reversed the order. The Seventh Circuit remanded the case with instructions that "one or more of the named plaintiffs or other members of the class ... replace ALSSA as the representative of the class." *ALSSA v. American Airlines, Inc.*, 490 F.2d 636, 643 (7th Cir.1973) *cert. denied,* 416 U.S. 993, 94 S.Ct. 2406, 40 L.Ed.2d 773 (1974).

TWA and ALSSA had entered into another agreement during the pendency of the appeal. Under this agreement, TWA would rehire all class members except those who refused to relinquish their litigation rights, again without backpay or retroactive seniority. This agreement formed the basis for a second EEOC charge and later a suit against TWA and ALSSA.[4]

Following remand, proper class representatives were appointed and notice was sent to potential class members. In September, 1974, TWA sought leave to amend its answer to include a third affirmative defense. In this affirmative defense, TWA asserted that the majority of the class members' claims were barred since they had not filed charges with the EEOC within 90 days of their discharge.[5] While granting the amendment, Judge McLaren cautioned that TWA's delay in pleading the defense might well constitute a waiver.

On October 15, 1976, Judge McGarr denied TWA's motion to restrict the class to those stewardesses that had filed with the EEOC within 90 days of their discharge. While Judge McGarr agreed that the 90 day filing requirement was a jurisdictional prerequisite not subject to waiver, he held that any violation by TWA continued against all class members until the challenged policy was changed. Thus, the 90 day requirement was satisfied for all class members by the June 1970 EEOC charges.

On October 19, 1976, Judge McGarr granted the plaintiff class's motion for summary judgment as to liability.

At TWA's request, both the liability order and the earlier jurisdictional order were certified for immediate appeal. The Seventh Circuit allowed interlocutory review and subsequently affirmed the summary judgment as to TWA's Title VII liability. *In re Consolidated Pretrial Proceedings,* 582 F.2d 1142 (7th Cir.1978). As to the jurisdictional issue, however, the Seventh Circuit declined "to extend the continuing violation theory ... to include in the plaintiff class those employees who were permanently terminated more than 90 days be-

---

3. Consolidated Case Number 70 C 2071.

4. Consolidated Case Number 74 C 2063.

5. At the time this case was filed, Title VII required charges to be filed with the EEOC within 90 days of the alleged unlawful employment practice. In 1972, this period was extended to 180 days. *See* 42 U.S.C. § 2000e–5(c).

fore the filing of EEOC charges." *Id.* at 1149. The Seventh Circuit's ruling effectively barred the claims of approximately 92% of the plaintiff class. *See Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 390, 102 S.Ct. 1127, 1130–31, 71 L.Ed.2d 234 (1982).

The Seventh Circuit stayed its mandate pending the filing of petitions for certiorari in the Supreme Court. A petition was in fact filed by the plaintiff class (No. 78–1545) and TWA cross-petitioned (No. 78–1549). The Supreme Court granted motions to defer consideration of the petitions, however, pending completion of settlement negotiations in the district court. 442 U.S. 916, 99 S.Ct. 2834, 61 L.Ed.2d 282 (1979).

As a result of the Seventh Circuit's ruling it was necessary to divide the plaintiff class into two sub classes. Class A plaintiffs were those stewardesses who had been fired within 90 days of the original EEOC charges. Class B consisted of those stewardesses who had been fired prior to that time.

Plaintiffs and TWA continued settlement negotiations. The proposed settlement agreement they eventually came up with provided that TWA would pay $3 million for pro rata distribution between the two plaintiff classes. The agreement also provided each class member with full retroactive company seniority. The agreement specified that competitive (union) seniority has to be decided by the court.

Following submission of the proposed settlement to this court, ALSSA's successor union, the Independent Federation of Flight Attendants ("IFFA"), intervened and objected to the grant of any seniority. IFFA challenged this court's jurisdiction to adjudicate seniority. Despite IFFA's challenge, in October 1979, this court approved the settlement agreement and granted full retroactive competitive seniority.

IFFA appealed. In June of 1980, the Seventh Circuit held that despite its earlier decision that the Class B plaintiffs' claims were jurisdictionally defective, this court had jurisdiction to approve the settlment which compromised on that issue. *ALSSA*

*v. Trans World Airlines, Inc.,* 630 F.2d 1164, 1169 (7th Cir.1980). The Seventh Circuit also affirmed this court's grant of full retroactive union seniority. *Id.*

IFFA petitioned the Supreme Court for certiorari. On March 9, 1981, the Supreme Court issued a writ of certiorari on IFFA's petition (No. 80–951) and also on the still-pending earlier petitions of the plaintiff class (No. 78–1545) (the class B jurisdictional issue) and TWA (No. 78–1549) (the liability issue). *See* 450 U.S. 979, 101 S.Ct. 1511, 67 L.Ed.2d 813 (1981). TWA's petition was shortly thereafter removed from argument, *see* 451 U.S. 980, 101 S.Ct. 2308, 68 L.Ed.2d 836 (1981), and was ultimately dismissed as improvidently granted. 455 U.S. at 392 n. 5, 102 S.Ct. at 1132 n. 5.

On February 24, 1982, the Supreme Court issued its landmark decision in *Zipes.* The Court in *Zipes* reversed the Seventh Circuit's 1979 decision that the claims of the Class B plaintiffs were barred. The *Zipes* Court held that Title VII's filing requirement was subject to waiver like any other statute of limitations. 455 U.S. at 392–398, 102 S.Ct. at 1131–35. The Court also found IFFA's claims meritless. *Id.* at 398–401, 102 S.Ct. at 1135–36.

## II. DISCUSSION

The instant fee petitions were filed by counsel for both Class A and Class B plaintiffs. Counsel for Class A plaintiffs seek an award against IFFA for those fees generated by IFFA's intervention in this case. Counsel for Class B seek fees both from IFFA for time spent defending IFFA's attacks upon this court's award of competetive seniority and from TWA for one-half of the time spent in the Supreme Court after certiorari was granted. The petition against TWA will be discussed first.

## A. FEES FROM TWA

■ Despite the arguments of counsel for Class B plaintiffs, a review of plaintiffs' 1979 settlement agreement with TWA discloses that TWA's liability for any attorney's fees was fully resolved by that settle-

ment agreement. The settlement agreement expressly excludes TWA from liability for any future payments, including fees.

Section II of the settlement agreement sets forth the purpose of the settlement:

"II. This Agreement is entered into between Trans World Airlines, Inc. (hereinafter referred to as 'TWA') and the undersigned representatives of the class for the purpose of compromising, settling and terminating all litigation of the lawsuits (including, but not limited to, the petitions for writs of certiorari now pending in U.S. Supreme Court, dockets numbers 78–1545 and 78–1549) and putting finally to rest all of the claims, issues and questions of fact and law which have or might have been raised on the facts alleged in the pleadings."

The petitions for certiorari were thus expressly addressed by the settlement.

Section III A of the settlement agreement provides that TWA would pay $3,000,-000 to settle the case. One half of this amount was to go to the members of each Class. TWA's liability for attorney's fees was expressly included within the $3,000,-000:

After deduction therefrom of all amounts awarded by the court for plaintffs' attorneys' fees, costs and expenses of litigation, the net amount will be prorated among the class members as provided in Section IV hereof. TWA has no responsibility concerning the calculations or allocations of the total amount among the class members or for fees, costs and expenses.

Thus, in paying the $3,000,000, TWA paid for all attorneys fees awardable against it in the litigation.

Plaintiffs point to the last sentence of Section III.A. quoted above to argue that TWA was only absolved of the responsibility of "calculating" or "allocating" the total amount of attorneys' fees, not the responsibility to pay fees. Plaintiffs' out of context emphasis on this one sentence misinterprets the clear intent of Section III.A. This section contemplated that all attorneys' fees assessable against TWA would

come from the $3,000,000. Since the amount of fees was then unknown, however, the sentence referenced by plaintiffs merely provides that plaintiffs, rather than TWA, would be left with the task of "calculating" and "allocating" fees.

Section III.D. of the settlement agreement provides that:

D. TWA will have no monetary or other obligation to any member of the class or to any representative or attorney for the class unless expressly provided in this Agreement.

Plaintiffs read this provision as meaning that TWA is liable for the Supreme Court attorneys fees absent an express agreement to the contrary. Plaintiffs again misread the clear language of the settlement agreement.

Plaintiffs argue that they could "hardly be deemed to have anticipated that the litigation with TWA would continue after the Settlement Agreement." Both Sections II and X of the agreement however refer specifically to the petitions for certiorari. Plaintiffs were also fully aware of IFFAs objections to the settlement and must have anticipated further contest from IFFA.

The underlying thrust of Class B plaintiffs' attack against TWA is that the attorney's fees generated by the necessity of fighting for the settlement in the Supreme Court were caused by TWA's litigation activities. As is clear from this court's May 6, 1982 order in this case, however, the postsettlement litigation was solely the result of IFFA's challenge to the settlement agreement.

As this court stated in the May 6 order at page 2:

When the terms of an agreement are plain and clear, interpretation of that agreement is a matter of law to be left to the court. [citations omitted].

The settlement agreement in this case clearly provides that the portion of the plaintiff's attorneys' fees recoverable from TWA are to be paid only out of the $3,000,-000 settlement. The settlement agreement is clear on this point and this court is bound

by that agreement. *See Sealy Mattress Co. of Michigan, Inc. v. Sealy, Inc.,* 789 F.2d 582, 585 (7th Cir.1986) (consent decrees to be construed strictly and "within its four corners"). Class B plaintiffs' have received over one and one quarter million dollars in attorney's fees from TWA under the agreement. Class B plaintiffs' petition for further fees from TWA is therefore denied.

## B. FEES FROM IFFA

### 1. LIABILITY FOR FEES

IFFA's principal argument against an award of fees is that it was in essence a "plaintiff" in this case and should therefore be subject to the fee standard set down in *Christiansburg Garment Corp. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). In *Christiansburg Garment* the Supreme Court held that when a prevailing Title VII defendant seeks fees against a losing plaintiff, a more rigorous standard applies than when a prevailing plaintiff seeks fees. A prevailing plaintiff is awarded fees almost automatically. *See Zabkowicz v. West Bend Co.,* 789 F.2d 540, 548 (7th Cir.1986). A prevailing defendant however is only awarded fees if the plaintiff's action was "frivolous, unreasonable, or groundless." *Christiansburg Garment,* 434 U.S. at 422, 98 S.Ct. at 701.

As Class B plaintiffs point out, under *Christiansburg Garment* the court's focus is on who is seeking fees *not,* as the IFFA asserts, on who fees are sought against. Plaintiffs are the "chosen instrument of Congress to vindicate 'a policy ... of the highest priority'", 434 U.S. at 418, 98 S.Ct. at 699, and Title VII's fee provision was included to "make it easier for a plaintiff of limited means to bring a meritorious suit." *Id.* at 421, 98 S.Ct. at 700. *See also Zabkowicz,* 789 F.2d at 552. No such lofty policy considerations are present when considering whether to award fees to a prevailing defendant; fees are only available to Title VII defendants to "deter the bringing of lawsuits without foundation." *Chris-*

tiansburg Garment, 434 U.S. at 420, 98 S.Ct. at 700.

■ The error in IFFA's attempt at focusing this court's attention on its plaintiff-like posture in this case is thus apparent. Fees are here sought by the prevailing plaintiffs. Fee awards to prevailing plaintiffs are encouraged and nothing requires them to show that their opponent's position was "frivolous" or maintained in bad faith. *See Eichman v. Linden & Sons, Inc.,* 752 F.2d 1246 (7th Cir.1985); *Lampher v. Zagel,* 755 F.2d 99 (7th Cir.1985). IFFA without question opposed plaintiffs in this case.

■ Neither does IFFA's assertion that intervenors enjoy special immunity from Title VII fees find support in case law. In *Moten v. Bricklayers, Masons and Plasterers,* 543 F.2d 224 (D.C.Cir.1976), the court awarded fees against an "intervenor-union"[6] that had presented objections to a Title VII settlement agreement. Based on the union's objections, the plaintiffs were compelled to mount a defense "in order to maintain their hard won settlement agreement." *Moten,* 543 F.2d at 239. The *Moten* court concluded that: "We think the liberal purposes of 42 U.S.C. § 2000e–5(k) are furthered by, and provide authority for, an award against the [union]." *Id.* The fee award in *Moten* was not, as IFFA suggests, based on the frivolousness of the union's position. *See also Haycraft v. Hollenbach,* 606 F.2d 128 (6th Cir.1979).

Similarly, in *Allen v. Terminal Transport Co.,* 486 F.Supp. 1195 (N.D.Ga.1980), *aff'd sub nom., U.S. v. Terminal Transport Co.,* 653 F.2d 1016 (5th Cir.1981), *cert. denied,* 455 U.S. 989, 102 S.Ct. 1613, 71 L.Ed.2d 849 (1982) fees were awarded against an intervenor-union even though the union was not liable for the underlying Title VII discrimination:

> [T]he unions have committed no actionable wrong here.... However, fees are not being taxed against the unions because the seniority perpetuated discrimination, albeit innocently; rather, they

6. The union had never formally presented a motion to intervene. The resulting disruption

to the ultimately upheld settlement was the same as if the union had properly intervened.

participated substantially in opposing the legitimate demands of the plaintiff class, so the unions should share the costs to the class.

486 F.Supp. at 1202. After discussing *Moten* and *Haycraft,* the *Allen* court concluded that the unions were liable for fees stating:

Notwithstanding the present arguments of the unions to the contrary, the actions of the labor defendants compelled the plaintiff class to defend its settlement and intensify its effort for further relief.

The Fifth Circuit not only affirmed the fee award, but remanded the case for assessment of additional costs and fees associated with the union's appeal. 653 F.2d at 1022.

While the cases in this area are not numerous they are consistent. *See Van Hoomissen v. Xerox Corp.,* 503 F.2d 1131 (9th Cir.1974); *Akron Center for Reproductive Health v. City of Akron,* 604 F.Supp. 1268 (N.D.Ohio 1984); *Thompson v. Sawyer,* 586 F.Supp. 635 (D.D.C.1984) (currently on appeal, D.C.Cir. #85–5264). *Cf. Robideau v. O'Brien,* 525 F.Supp. 878 (E.D.Mich.1981) (§ 1988). Unsuccessful Title VII union intervenors are, like unsuccessful Title VII defendants, consistently held responsible for attorneys' fees.

The only case which arguably supports IFFA's position focused on the union's "good faith" in intervening and thus misapprehended the nature of the inquiry that determines a fee award against an intervenor-union. *See Kirkland v. New York State Department of Correction Services,* 524 F.Supp. 1214 (S.D.N.Y.1981). It is noteworthy that shortly after *Kirkland,* that same court awarded fees against a union-intervenor in circumstances nearly identical to this case. *Vulcan Society of Westchester County v. Fire Department,* 533 F.Supp. 1054 (S.D.N.Y.1982). The summary in *Vulcan* closely reflects the facts underlying this case and persuasively suggests the propriety of a fee award against IFFA:

[The union-intervenors] litigated vigorously in opposition to many of plaintiffs' objectives, and struggled to prevent settlements the unions felt were against their interests. Their efforts imposed substantial costs upon plaintiffs, and plaintiffs prevailed over the unions' opposition on most of the issues involved, and particularly in obtaining settlements which the unions opposed.

533 F.Supp. at 1062. *See also City of Akron,* 604 F.Supp. at 1273.

 It is indisputable that both plaintiff classes in this case prevailed. The case was hard fought and was brought during the infancy of Title VII. Due to the continued efforts of plaintiffs' attorneys, the classes won in this court, in the Seventh Circuit, and finally in the Supreme Court. Because of the IFFA's intervention, the plaintiff classes' ultimate victory was delayed and came at a greatly increased cost. This court considers it fair and just that IFFA now reimburse plaintiffs for the extra cost attributable only to their intervention.

### 2. AMOUNT OF FEES FOR CLASS B

Counsel for Class B plaintiffs have more than adequately documented and justified the fee award that they request. Their efforts on behalf of the plaintiff class were of the highest caliber throughout and are further well-reflected in their fee petition. Only a few comments are necessary at this point to dispose of IFFA's objections.[7]

 a. Fee multipliers are appropriate in this type of complex and protracted Title VII action. *See Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Waters v. Wisconsin Steel Works,* 502 F.2d 1309, 1322 (7th Cir.1974). Plaintiffs' attorneys have cited countless other cases supporting this point. *See* Plaintiffs' Reply Memorandum in Support of Plaintiffs' Mo-

---

7. IFFA raises a handful of additional objections besides those listed. For example, IFFA asserts that the fee provisions of the Title VII apply only to "litigated judgments" rather than settle-

ment. This argument, as well as the others raised, are without merit. *See Lovell v. City of Kankakee,* 783 F.2d 95 (7th Cir.1986)

tion to Award Attorneys' Fees Against the Union at 16–17. No purpose is served by re-citing those cases here.

 b. This court can properly award fees for time spent in this court as well as time spent on appeal. *See Ekanem v. The Health and Hospital Corp. of Marion County, Indiana,* 778 F.2d 1254, 1257 (7th Cir.1985).

 c. Plaintiffs' attorneys are entitled to compensation for the work underlying preparation of the instant fee dispute. *Bond v. Stanton,* 630 F.2d 1231, 1235–36 (7th Cir.1980).

 d. Class B plaintiffs obtained the services of Attorney Raymond Randolph to assist in preparing for arguments in the Supreme Court. The duplication of effort caused by hiring Mr. Randolph is only reflected in the approximately twenty-five hours of time he spent reviewing the extensive history of this case. Mr. Randolph's requested time is reasonable and is fully compensable.

 e. Plaintiffs' counsel are entitled to reimbursement for their out-of-pocket expenses. *Zabkowicz,* 789 F.2d at 553–54.

 f. This court is not required to use different hourly rates for different types (*e.g.* in-court versus out-of-court) of work. *Berberena v. Coler,* 753 F.2d 629 (7th Cir.1985).

### 3. AMOUNT OF FEES FOR CLASS A

Counsel for Class A plaintiffs are entitled to a fee award against the IFFA for the same reasons stated above for the Class B attorneys. The Class A attorneys already have recovered the $57,258 in fees at issue from the settlement fund. IFFA is thus ordered to reimburse the fund in this amount.

### III. CONCLUSION

For the reasons stated herein, the petition for attorneys' fees against TWA is denied. The petitions of Class A and Class B plaintiffs for attorneys' fees against IFFA are granted. Class B plaintiffs are awarded $171,747 in fees and $5,978 in expenses. IFFA is to pay the $57,258 awarded to Class A plaintiffs into the settlement fund.