Dorothy M. THOMPSON, et al., Plaintiffs,

v.

Danford L. SAWYER, Jr., Public Printer, Defendant.

Civ. A. No. 74–1101.

United States District Court, District of Columbia.

May 8, 1984.

Nora A. Bailey of Ivins, Phillips & Barker, David M. Dorsen of Sachs, Greenebaum & Taylor, Roger L. Warin and Colleen P. Mahoney of Steptoe & Johnson, Chartered, and Roderic V.O. Boggs of the Washington Lawyer's Committee for Civil Rights Under Law, Washington, D.C., for plaintiffs.

Stanley S. Harris, U.S. Atty., Washington, D.C., at the time briefs were filed, Royce C. Lamberth and Robert C. Seldon, Asst. U.S. Attys., for defendant.

Elihu I. Leifer and Victoria L. Bor of Sherman, Dunn, Cohen, Leifer & Counts, P.C., Washington, D.C., for Local 4–B.

CHARLES R. RICHEY, District Judge.

## BACKGROUND

Plaintiffs seek an award of reasonable attorneys fees pursuant to 42 U.S.C. § 2000e–5(k) for services rendered in connection with three unsuccessful attempts by Local 4–B of the Graphic Arts International Union, AFL–CIO, to intervene in the above-captioned case. Before the Court are plaintiffs' Application for Attorneys' Fees Against Local 4–B, Local 4–B's Opposition, Plaintiffs' Reply Memoranda and the various affidavits and documents filed with these pleadings or referred to therein.[1]

In May of 1973, five females filed an administrative complaint on behalf of approximately 325 Journeyman Bindery Workers (JBWs) employed in the Bindery Division of the Government Printing Office (GPO) alleging violations of the Equal Pay Act, 29 U.S.C. § 206(d), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16. After an exhaustion of administrative remedies, the plaintiffs filed a class action in this Court. The complaint alleged a broad pattern and practice of discrimination by GPO and requested injunctive, declaratory and monetary relief.

On October 1, 1979, after full discovery and trial before the Court, this Court issued a memorandum opinion on the issue of liability and found that Grade 4 JBW plaintiffs who operated Smyth Sewing Machines were entitled to relief under the Equal Pay Act and Title VII. Following the submission of proposed orders and memoranda, on May 20, 1980, the Court issued a relief order with a supporting memorandum. 499 F.Supp. 1147. Among the provisions of the order were that plaintiffs were entitled to back pay relief under the Equal Pay Act and Title VII prior to the effective date of those statutes and that plaintiffs were entitled to quota and other prospective relief under Title VII. The Court made several amendments to the relief order on July 8, 1980. Local 4–B filed a motion to intervene in order to have the Court rescind two of these amendments. The Court denied the Local's mo-

---

**1.** For example, the Court takes judicial notice of the relevant proceedings of this case that have taken place in the D.C. Circuit, the various affidavits filed in support of Plaintiffs' Application for Attorneys' Fees against the defendant in this case, and finally, several pleadings from the case *Jones v. Local 4–B*, No. 81–3098 (D.D.C.) that were referred to at page two of Plaintiffs' Reply to Local 4–B's Response in Opposition to Plaintiffs' Application for Attorneys' Fees.

tion on September 16, 1980 and stayed certain portions of the May 20th order pending appeal.

GPO appealed the Court's order of May 20, 1980 and plaintiffs filed a cross-appeal in the United States Court of Appeals for the D.C. Circuit.[2] On November 19, 1980 and December 29, 1980, Local 4–B filed motions in the Court of Appeals for leave to intervene or, in the alternative, to participate as *amicus curiae*. In two orders dated January 8, 1981 and June 4, 1981, the D.C. Circuit denied these motions.

On June 16, 1981, this Court entered a Consent Order relating to whether certain provisions of the May 20, 1980 relief order should be stayed. Local 4–B filed a motion to intervene for the purpose of setting aside the consent order. The Court denied that motion on July 31, 1981.

Plaintiffs now seek reimbursement of their attorneys' fees for successfully defending against the Local's three attempts to intervene as outlined above. The Local challenges the propriety of awarding fees on several grounds including that plaintiffs' are not "prevailing parties" and that its financial condition and national labor policy bar an award of fees. Upon full consideration of the parties' memoranda and exhibits, and the entire record herein, the Court concludes that plaintiffs are entitled to reasonable attorneys' fees from Local 4–B in the amount of $37,245.00 and expenses in the amount of $216.45.

### AS AN UNSUCCESSFUL INTERVENOR IN THIS ACTION, LOCAL 4–B IS LIABLE FOR ATTORNEYS' FEES

■ Section 706(k) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(k) provides that "[i]n any action or proceeding under this title, the court, in its discretion, may allow the *prevailing party* ... a reasonable attorney's fee as part of the costs...." (emphasis added). The Local essentially argues that plaintiffs did not prevail in their claims against the Local because as an unsuccessful intervenor the

Local was never allowed to participate in the substantive aspects of the case as a party. On the basis of the law in this and other circuits, the Local's argument must fail.

In *Moten v. Bricklayers, Masons and Plasterers*, 543 F.2d 224 (D.C.Cir.1976), this Circuit awarded fees against a contractor's association that had not been a party to an original Title VII suit, and that had not even formally presented a motion to intervene. The association, however, did present objections to the District Court concerning the settlement agreement among the parties in the Title VII action. The District Court approved the settlement, the Association appealed, and the original plaintiff moved to dismiss the appeal. The Court of Appeals "easily dismissed the Association's appeal, since it had not sought to be made a party." *Id.* at 239. In determining that the Association was liable for attorney's fees, the Court noted:

> The first question is whether any attorneys' fees are taxable against the Association under Title VII, since the Association was not a "party." But the Association purported to become a party appellant when it filed its appeal and the plaintiffs were compelled to defend against its efforts in order to maintain their hard-won settlement agreement. This is not a situation in which the court is being asked to enter an award against a person which has in no way entered its name upon the court records. We think the liberal purposes of 42 U.S.C. § 2000e–5(k) are furthered by, and provide authority for, an award against the Association.

*Id;* *see also Van Hoomissen v. Xerox Corp.*, 503 F.2d 1131 (9th Cir.1974) (court granted fees arising out of unsuccessful appeal of denial of motion to intervene).

As in *Moten*, the plaintiffs in this case were forced to defend against the unsuccessful efforts of a non-party to alter the relief successfully attained by the plaintiffs

---

**2.** On April 27, 1982, the Court of Appeals for the District of Columbia Circuit affirmed this Court's decision in almost all respects. 678 F.2d

257. The Court of Appeals remanded the case for a refashioning of some of the relief granted plaintiffs by this Court.

after years of litigation work. In this case, by seeking intervention and modification of the District Court's relief orders, the Local "erected substantial obstacles that the plaintiffs had to overcome" in resisting the defendant's discriminatory treatment and attaining the desired and court-ordered relief. *See Allen v. Terminal Transport Co.*, 486 F.Supp. 1195, 1203 (N.D.Ga.1980), *aff'd*, 638 F.2d 1232 (5th Cir.1981), *modified on other grounds*, 653 F.2d 1016 (5th Cir.1981), *cert. denied*, 455 U.S. 989, 102 S.Ct. 1613, 71 L.Ed.2d 849 (1982). The actions of the Local compelled the plaintiffs to defend their right to relief with added intensity and effort. *Id; see also Haycraft v. Hollenbach*, 606 F.2d 128 (6th Cir.1979). Careful scrutiny of the pleadings submitted by the Local in support of intervention and modification of this Court's relief order, reveal that their primary purpose was to argue for the maintenance of certain promotion opportunities for male bookbinders at the expense of plaintiffs and their judicially ordered relief. Of approximately 200 employees represented by the Local, at the time of the proposed intervention, there was but one female member. Letter of Elihu I. Leifer to the Honorable Charles R. Richey, dated April 25, 1980, at p. 3. The Court's interim relief order granted substantial relief to the class of female Journeyman Bindery workers. In its July 22, 1980 Motion To Intervene, the Local sought to challenge two amendments made to the relief order in this case, noting:

> It is therefore, clear that the two amendments in question deprive members of Local 4B's bargaining unit of substantial employment opportunities which they have enjoyed in the past ...

Motion To Intervene (July 22, 1980) at p. 4. The plaintiffs were forced to defend against the potential challenge to the relief order, and by successfully preventing that challenge, the plaintiffs "succeed[ed] on [a] significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, ——, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983), *quoting Nadeau v. Helgemoe*, 581 F.2d 275, 278–79

(1st Cir.1978). As such, plaintiffs are a prevailing party against the Local.

The Local relies on *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978) and the language of this circuit's decision in *Grubbs v. Butz*, 548 F.2d 973 (D.C.Cir.1976) that "we cannot believe Congress would have countenanced assessing fees against a defendant absent any showing of discrimination." *Id.* at 976. First, as to the language in *Grubbs*, the Court addressed the issue of awarding *interim* fees against a *defendant* without any judicial determination that the defendant had violated any discrimination law. As the Court noted, "[i]f attorneys' fees were assessed against them at [that] point in the litigation, the ulimately successful party might end up having subsidized a large segment of the losing party's suit against him." *Id.* There is no such danger in this case because the Court has already determined that the defendant did violate the Equal Pay Act and Title VII and has already conclusively determined that intervention by the Local would be inappropriate. There is no possibility that at some point later in the litigation, the Local will prevail against the plaintiffs. In addition, the Court in *Moten* was aware of the *Grubbs* decision and assessed fees against the unsuccessful intervenor without any finding that the proposed intervenor had violated discrimination laws. *See Moten*, 543 F.2d at 239 n. 3.

As to *Christiansburg*, the Local relies on the Supreme Court's statement that "when a district court awards counsel fees to a prevailing plaintiff, it is awarding them against a violator of federal law." 434 U.S. at 418, 98 S.Ct. at 698. This language, however, must be interpreted within the context of the facts of the case before the Supreme Court. The Court was addressing the issue of whether to assess fees against a *defendant*. In such cases, the Supreme Court's language is perfectly consistent with the desirable policy of awarding fees only when there is a judicial finding of discriminatory behavior. In the case at bar, the Court must address the issue of

assessing attorneys' fees against an *unsuccessful intervenor* rather than a defendant. In this context, the Supreme Court's language from *Christiansburg* does not apply.

## CALCULATION OF THE LODESTAR

### A. Reasonable Number of Hours

■ The calculation of reasonable fees necessarily begins with the establishment of the "lodestar" fee which is computed by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C.Cir.1980); *Hensley v. Eckerhart*, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); *Blum v. Stenson*, 52 U.S.L.W. 4377, 4380 (1984). Attorneys' fees may only be awarded for time reasonably expended, and thus the plaintiffs' fee application must contain "sufficiently detailed information about the hours logged and the work done." *National Association of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1327 (D.C.Cir.1982).

Plaintiffs have requested compensation for 266.5 hours of attorney time. Along with their fee application against the Local, plaintiffs have submitted affidavits of Nora A. Bailey and David M. Dorsen that provide detailed summaries of work performed by each attorney for which fees are requested, prepared from contemporaneously prepared time records. The Local does not dispute the reasonableness of the hours expended by plaintiffs' counsel, except that the Local argues that no fees should be awarded in connection with plaintiffs' motion to strike and supplemental brief and appendix filed in the Court of Appeals. An independent analysis of the hours devoted to challenging the Local's attempts at intervention indicates that they are documented in accordance with the criteria set forth in *Concerned Veterans*.

With respect to the Local's claim that the fee award should not include those hours spent on the Motion to Strike and Supplemental Brief and Appendix in the Court of Appeals, the Court concludes that these hours should *not* be excluded. The Supreme Court has held that "[w]here the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Hensley*, 103 S.Ct. at 1943. In that case, the Supreme Court was concerned with a situation in which "work on one claim will be unrelated to ... work on another claim" and where work on an unsuccessful claim could not be deemed to have been "expended in pursuit of the ultimate result achieved." *Id.* at 1940. Such is not the case here. Both the Motion to Strike and the Supplementary Brief and Appendix were filed in the Court of Appeals as part of an ongoing challenge to the intervention of the Local. These pleadings did not present distinct claims for which work would be unrelated to the ultimate result achieved.[3]

■ The Local has not pointed to, and the Court is unable to find any authority for the proposition that this Court should dissect the submissions by a party who fully prevails, and assess fees for only those motions granted or particularly well reasoned. As noted by the Court of Appeals for this Circuit, "no reduction in fee is appropriate where the issue was all part and parcel of one matter, but only when the claims asserted are truly fractionable." *Copeland v. Marshall*, 641 F.2d at 892 n. 18. Where a case presents multiple claims for relief involving a "common core of facts" or related legal theories ... the overall relief obtained should be examined

---

**3.** The Court notes at this point that the Court of Appeals denied plaintiffs' request for costs for the Supplemental Brief and Appendix filed during the cross-appeals in this case. The Court believes, however, that the Supreme Court decision in *Hensley*, which was handed down after the Court of Appeals decision on costs, outlines the standard for assessing fees and costs for such proceedings. Under this newly articulated standard, the Court is confident that an award of fees for the Supplemental Brief and Appendix is within its traditionally broad discretion in awarding attorneys' fees.

in relation to the hours reasonably expended on the litigation. *Hensley*, 103 S.Ct. at 1940; *Turgeon v. Howard University*, No. 81–2973, slip op. at 4 (D.D.C. November 16, 1983). The Court finds that plaintiffs' request for 266.5 hours of attorney time is reasonable under the facts and circumstances of this case.

### B. Reasonable Hourly Rates

█ The remaining element in determining the "lodestar" figure for reasonable attorneys' fees, is the reasonable hourly rate. The reasonable hourly rate is the rate prevailing in the community for similar work. *Copeland v. Marshall*, 641 F.2d at 892. In making this determination, the Court may consider such factors as the level of skill needed to perform the work, time limitations imposed by the representation, the amount to be obtained in the litigation, the attorney's reputation and the undesirability of the case. *Id.* In providing specific evidence of the prevailing rates in the community, the applicant may rely on affidavits setting forth the fees that attorneys with similar qualifications have received from fee paying clients in comparable cases. *Concerned Veterans*, 675 F.2d at 1325. Counsel should also submit specific evidence of his or her actual billing practice during the relevant time period. *Id.* at 1326.

█ Plaintiffs have submitted for this Court's consideration, the affidavits of David M. Dorsen and Nora A. Bailey, counsel for the plaintiffs and approximately 20 affidavits relating to the issue of what the prevailing community rates for attorneys is for comparable cases. *See* Exhibits to Supplemental Memorandum in Support of Plaintiffs' Application for An Award From Defendant of Attorneys' Fees and Costs, filed March 29, 1983 and incorporated into Plaintiffs' Motion for Fees Against Local 4–B by reference.

Plaintiffs request compensation of $150 per hour for David Dorsen, a partner who was admitted to the bar approximately 25 years ago; $135 per hour for Nora Bailey, a partner who was admitted to the Bar approximately 12 years ago. In addition, plaintiffs request an hourly rate of $100 per hour for T. Hylden[4] and a rate of $45–$60 per hour for K.M. Gibbons, a law clerk who became an associate during the litigation of this case. The Local does not appear to dispute the reasonableness of any of these rates.

In *Laffey v. Northwest Airlines*, 32 Fair Empl.Prac.Cas. (BNA) 783, 786, 572 F.Supp. 354 (D.D.C.1983), this Court found that the following rates generally reflected the prevailing hourly rates for lawyers of excellent qualifications who handle complex Title VII cases:

—$175 an hour for very experienced federal court litigators, i.e., lawyers in their twentieth year or more after graduation from law school;

—$150 an hour for experienced federal court litigators in their eleventh through nineteenth years after law school graduation;

—$125 an hour for experienced federal court litigators in their eighth through tenth years after graduation from law school;

—$100 an hour for senior associates, i.e., four to seven years after graduation from law school; and

—$75 an hour for junior associates, i.e., one to three years after law school graduation.

Based upon the submissions of counsel, the Court finds it appropriate to award plaintiffs' counsel Mr. Dorsen attorneys' fees at the rate of $150 an hour. His affidavit reflects a level of experience and skill justifying such a rate. In addition, this rate appears to be within the range of prevailing rates within the community.

---

**4.** Plaintiffs have not submitted any affidavits or submissions providing this Court with T. Hylden's background or qualifications. As such, the Court concludes that plaintiffs have failed to show that a $100 per hour rate is reasonable.

Given the absence of adequate background information and the fact that plaintiffs only claim .25 hours of time for this attorney, the Court will not assess any attorneys' fees against the Local for T. Hylden's work.

*See e.g.,* Exhibits D, E and V submitted in Support of Plaintiffs' Application for Fees. With respect to the proposed rate of $135 an hour for Nora A. Bailey, based upon her affidavit, the Court concludes that a rate of $135 an hour is justified and reasonable. The rate is substantially below her normal billing rate of $185 an hour. Ms. Bailey is a specialist in tax matters, and while a great deal of her litigation experience is in that area, she has spent a large amount of time on this case and has advised other clients in civil rights matters. The Court determines that a reasonable hourly rate is $135 an hour for her work in this case. Finally, the Court concludes that Ms. Gibbons rates of $45 an hour while she was a law clerk, and $60 an hour as a new associate are reasonable ones. *See* Exhibit S.

For the reasons set forth above, the Court awards the following lodestar figure:

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| David M. Dorsen | 156.75 | $150 | $23,512.50 |
| Nora A. Bailey | 96.50 | $135 | 13,027.50 |
| K. M. Gibbons | 5.00 | $ 45 | 225.00 |
| K. M. Gibbons | 8.00 | $ 60 | 480.00 |
| LODESTAR FIGURE — | | | 37,245.00 |

## ADJUSTMENTS TO LODESTAR

Plaintiffs do not request any upward adjustment in the lodestar figure, and thus, the Court declines to make any such adjustments. The Local, however, vigorously contends that its alleged inability to pay attorneys' fees because of its financial status should at least partially, if not fully reduce the lodestar figure. The Local relies primarily on *International Brotherhood of Electrical Workers v. Foust,* 442 U.S. 42, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979) for the proposition that national labor policy bars an award of fees in this case. *Foust* is not controlling for two reasons. First, the *Foust* case did not involve any of the important policy considerations underlying Title VII since it was decided under the Railway Labor Act. In addition, the Supreme Court denied an award of *punitive damages* against a labor union, not an award of attorneys' fees. Attorneys' fees are costs that a Title VII plaintiff must initially incur and to which such a plaintiff is entitled to reimbursement if he is a prevailing party. Such a right does not exist for punitive damages.

The Local has not cited one case holding that its ability to pay attorneys' fees is a consideration that this Court must take into account when assessing fees. The Supreme Court has recognized that a party seeking to enforce the rights protected by the Civil Rights statutes, "should ordinarily recover an attorneys' fee unless special circumstances would render such an award unjust." *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968). There is no provision in any of the civil rights statutes for denying liability on the inability of the defendant to pay. *McPherson v. School District #186,* 465 F.Supp. 749, 755 (S.D. Ill.1978). The Congressional Statement accompanying an amendment to § 1988 of the Attorney's Fees Awards Act of 1976 provided:

> There are very few provisions in our federal laws which are self-executing. Enforcement of the laws depends upon governmental action and, in some cases, on private action through the courts. If the cost of private enforcement actions becomes too great, there will be no private enforcement. If our civil rights laws are not to become mere hollow pronouncements which the average citizen cannot enforce, we must maintain the traditional effective remedy of fee shifting in these cases.

In addition, lack of funds on the part of a non-prevailing party would not seem to be one of the "special circumstances Congress had in mind, since Congress clearly contemplated that governmental bodies, which are usually short of funds, would often be the defendants against which attorneys' fees would be assessed. S.Rep. No. 1011, 94th Cong., 2d Sess. 5, *reprinted in* [1976] U.S. Code Cong. & Admin.News, pp. 5908, 5913.

The retention of this fee shifting policy despite allegations of financial difficulty is also dictated by the Court of Appeals' holding that "we do not think that the amount of the fee should depend on the identity of the losing party." *Copeland v.*

*Marshall*, 641 F.2d 880, 894 (D.C.Cir.1980). Regardless of who the non-prevailing party is, when a plaintiff prevails, there is an important incentive to insure that similarly situated plaintiffs are able to find competent counsel in order to pursue their causes of action. As the Supreme Court has recognized, "no fee is reasonable unless it would be adequate to induce other attorneys to represent similarly situated clients seeking relief comparable to that obtained in the case at hand." *Hensley*, 103 S.Ct. at 1948. To allow the Local to escape liability because of its alleged inability to pay, would contravene the very purpose for which the fee shifting provision has been enacted.[5] "Any fee setting formula must produce an award sufficient to fulfill the primary purpose of awarding fees in Title VII cases, namely 'to encourage individuals injured by ... discrimination to seek judicial relief.'" *Copeland v. Marshall*, 641 F.2d 880, 890 (D.C.Cir.1980), *quoting Piggie Park*, 390 U.S. at 402, 88 S.Ct. at 966. The Court determines, therefore, that the policy inherent in the fee-shifting provisions of the civil rights statutes outweigh any policy to take into account the financial condition of the Local.[6]

## OTHER EXPENSES

In addition to attorneys' fees, plaintiffs have requested an award of $216.45 for expenses that include copying costs, local transportation, and deliveries. This Court has held that the objectives of Title VII attorneys' fee awards support a full compensatory award, which necessarily includes all reasonably incurred expenses incident to the litigation normally billed to fee-paying clients. *Laffey*, 32 Fair Empl. Prac.Cas. at 793, 572 F.Supp. 354. Given that the expenditures here are minute, the Court finds that these expenses are sufficiently documented by their identification by category. *Laffey*, 32 Fair Empl.Prac. Cas. at 793, 572 F.Supp. 354, and that plaintiffs are entitled to the $216.45.

## CONCLUSION

For the reasons set forth above, the Court makes the following award of attorney's fees and expenses:

| | |
|---|---|
| LODESTAR FIGURE | $37.245.00 |
| EXPENSES | 216.45 |
| TOTAL AWARD | $37,461.45 |

An order in accordance with the foregoing will be entered of even date herewith.

---

**5.** Some courts have considered the relative financial positions of litigants in assessing attorneys' fees against a plaintiff. *See e.g., Faraci v. Hickey-Freeman Co.*, 607 F.2d 1025 (2d Cir. 1979); *Arnold v. Burger King Corp.*, 719 F.2d 63 (4th Cir.1983). In such instances, consideration of the relative financial positions may foster Title VII's purposes. Indeed, "fee awards that callously disregard the financial straits of a losing plaintiff would soon defeat the overarching remedial purposes of Title VII by discouraging all but the air-tight cases." *Arnold*, 719 F.2d at 68, *citing Christianburg*, 434 U.S. at 422, 98 S.Ct. at 700. Such a potential result is inapplicable in assessing attorneys' fees against a defendant or one who chooses to side with a defendant.

**6.** Even if the Court were to take into account the financial condition of the Local, the Court is not convinced that the Local is unable to pay the fees. Furthermore, the Local's argument is basically an equitable one; that is, who is in a better position to pay the fees? In that regard, the Local has failed to provide *any* evidence that the plaintiffs in this case are in any better position to absorb the costs of litigation.