Anne B. ZIPES, et al.,
Plaintiffs–Appellees,

v.

TRANS WORLD AIRLINES, INC., et al., Defendants,

and

Independent Federation of Flight Attendants, Intervenor–Appellant.

No. 86–2731.

United States Court of Appeals,
Seventh Circuit.

Argued April 23, 1987.

Decided May 6, 1988.

Rehearing and Rehearing In Banc Denied July 22, 1988.

COFFEY, Circuit Judge.

This dispute over liability for statutory attorneys' fees has its origins in a 1970 class action filed by the plaintiffs against Trans World Airlines ("TWA") alleging unlawful sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* After nearly nine years of litigation, the plaintiffs entered into a comprehensive settlement agreement with TWA which was contested by the intervenor, the Independent Federation of Flight Attendants ("IFFA"), on the grounds that the terms of the settlement violated the rights of those TWA flight attendants not members of the plaintiff class. IFFA's opposition to the settlement agreement consumed three years of litigation culminating in 1982 when the plaintiff class prevailed before the Supreme Court. Subsequently, pursuant to section 706(k) of Title VII, 42 U.S.C. § 2000e–5(k), plaintiffs' attorneys successfully petitioned the district court for fees incurred in connection with their post-settlement legal work. We affirm the district court's award of post-settlement fees against IFFA as well as its use of a multiplier in calculating that award.

## I.  FACTS

The proceedings which pre-date this lawsuit are summarized in *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). The plaintiffs brought this class action against TWA back in 1970, challenging the airline's policy of automatically terminating the employment of all female flight attendants who became mothers while permitting their male counterparts, new fathers, to continue flying.[1] Soon after the filing of suit by the plaintiffs, TWA abandoned its "no-motherhood" policy and IFFA's predecessor, then representing *both* the plaintiff class and unaffected flight attendants, entered into a settlement with TWA. Although the district court approved the proffered settle-

Steven A. Fehr, Jolley Walsh Hager & Gordon, Kansas City, Mo., for appellant.

Aram A. Hartunian, Hartunian, Futterman & Howard, Chicago, Ill., for appellees.

Before CUMMINGS, COFFEY, and MANION, Circuit Judges.

---

**1.** Presumably, although it is not clear from the record, TWA actually terminated flight attend-

ants upon learning of their pregnancy.

ment, several disenchanted class members appealed. We reversed the district court's approval of the 1971 settlement based upon the conflict we perceived between the then union's obligations to the plaintiff class on the one hand and to the then-currently working flight attendants on the other. *Air Line Stewards and Stewardesses Association v. American Airlines,* 490 F.2d 636 (7th Cir.1973). We ordered IFFA's predecessor to be replaced as the class representative.

Following reinstatement of the lawsuit, the district court granted the plaintiffs' motion for summary judgment, concluding that TWA's "no-motherhood" policy violated Title VII's proscription against discrimination in employment on the basis of sex. We affirmed the district court's finding of unlawful employment discrimination but held that the claims of a number of the members of the class were barred because charges had not been timely filed with the Equal Employment Opportunity Commission ("EEOC"). *In re Consolidated Pretrial Proceedings in the Airline Cases,* 582 F.2d 1142 (7th Cir.1978). Our holding on the timeliness issue necessitated that we divide the plaintiff class into two groups—Sub Class A, class members whose EEOC charges were timely, and Sub Class B, those whose charges were untimely—and that we remand the case with respect to the timely claims of Sub Class A.

Prior to any action in the district court in response to our remand, the parties reached a settlement which provided, *inter alia,* that TWA establish a $3,000,000 settlement fund to benefit all class members and that each class member be credited with full company and union seniority from the date of her termination by the airline. IFFA, the union certified to act as the collective-bargaining agent both for those TWA flight attendants not affected by the airline's discontinued "no-motherhood" policy and for flight attendants hired since the termination of the plaintiffs, sought and received permission to intervene in the law-

suit to object to the settlement. Specifically, IFFA opposed the proposed settlement on two grounds: first, that the untimely filing of charges with the EEOC by members of Sub Class B left the district court without jurisdiction to consider equitable relief affecting them, and second, that reinstatement of the plaintiffs with full retroactive "competitive" seniority[2] would violate the collective bargaining agreement then in place between TWA and the union's incumbent members. After three days of hearings, during which time IFFA had an opportunity to air its objections, the district court approved the settlement agreement and expressly found that "full restoration of retroactive seniority will not have an unusual adverse impact upon currently employed flight attendants in a manner which is not typical of other Title VII cases...." (Mem.Op., November 8, 1979 at 2.)

IFFA appealed, arguing that in light of this court's earlier decision that the timely filing of an EEOC charge was a jurisdictional prerequisite, the district court erred in holding that it retained jurisdiction to approve the settlement agreement with respect to Sub Class B. Once again, we ruled in favor of the plaintiffs and affirmed the district court, reasoning that "the principles favoring settlement of class action lawsuits remain the same regardless of whether the disputed legal issues center on the jurisdiction of the court over the action." *Air Line Stewards and Stewardesses Assn. v. Trans World Airlines, Inc.,* 630 F.2d 1164, 1169 (7th Cir.1980). We also affirmed use of the remedy of retroactive competitive seniority for eligible class members; in our view the settlement responded appropriately both to TWA's past acts of discrimination as well as to the tangible consequences of those past acts. *Id.*

IFFA filed a petition for certiorari. The Supreme Court granted the petition and consolidated it with an earlier petition filed by the plaintiffs, consideration of which the

---

**2.** Ordinarily, "seniority" determines an employee's entitlement to benefits earned under an employment contract. "Competitive seniority," on the other hand, is used to allocate entitle-

ments to benefits *among competing employees;* for example, shift assignments; prerogative in scheduling vacation; training opportunities; etc.

Court had deferred in light of the then-ongoing settlement negotiations between the plaintiffs and TWA. The plaintiffs had sought review of our prior decision holding that timely filing of EEOC charges constituted a jurisdictional prerequisite which barred the claims of Sub Class B. IFFA, on the other hand, petitioned for review of our ruling that the terms of the settlement agreement—the reinstatement of discharged flight attendants with retroactive competitive seniority—did not impermissibly infringe upon the collectively-bargained for rights of incumbent flight attendants. In *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), the Court held that we had been mistaken in construing the filing requirement of Title VII, Section 2000e–5(e), as being jurisdictional but agreed that reinstatement of the plaintiffs with full retroactive competitive seniority was a remedy both authorized by Title VII and appropriate in these circumstances.

Having been twice vindicated in the Supreme Court, plaintiffs' attorneys petitioned the district court for an award of fees against IFFA for their successful defense of the settlement agreement. In turn, the district court assessed IFFA $57,-258 as fees for counsel for Sub Class A and $171,747 (comprised of a "lodestar" figure of $85,873.50 increased by a multiplier of 2) as fees for counsel for Sub Class B. *Air Line Stewards v. Trans World Airlines, Inc.*, 640 F.Supp. 861 (N.D.Ill.1986). Subsequently, upon motion, the district court lowered the multiplier used to compute the fees for Sub Class B from 2 to 1.44, yielding an award to counsel of $123,657.84. IFFA's total liability for fees incurred solely as a result of its challenge to the settlement agreement thus currently stands at $180,915.84.

**3.** Section 706(k), 42 U.S.C. § 2000e–5(k) provides in relevant part:
> In any action or proceeding under this subchapter the court, *in its discretion,* may allow the prevailing party, other than the [Equal Opportunity Employment] Commission or the United States, a reasonable attorney's fee as part of the costs....

(Emphasis added).

**4.** Section 1988 states in pertinent part:

## II. DISCUSSION

On appeal, IFFA asserts that the fee-shifting provision of Title VII, section 706(k),[3] does not authorize an award of attorneys' fees against an intervening party which has not been accused of a violation of federal law and which, in an effort to protect the rights of its members, raises arguments analogous to those a plaintiff would ordinarily make. Alternatively, in the event we disagree with its interpretation of section 706(k), IFFA points to certain "special circumstances" which it claims render an award of fees inappropriate. Finally, IFFA argues that even if the district court's decision to award fees is upheld, the use of a multiplier to increase the amount of the award to counsel for Sub Class B was improper. We consider these arguments in turn.

### A. Liability of "Innocent" Intervening Parties

■ In *Charles v. Daley*, 846 F.2d 1057 (7th Cir.1988), we addressed the question whether an "innocent" third party intervenor-defendant can be held liable for the attorneys' fees incurred by a prevailing party under the Civil Rights Attorneys' Fees Awards Act, 42 U.S.C. § 1988.[4] *Charles* involved an award of attorneys' fees pursuant to section 1988 against three private parties who intervened on the side of Illinois in a suit challenging the constitutionality of the State's criminal abortion statute. In finding against the intervening defendants and in favor of the prevailing plaintiffs in *Charles*, we held, that although the language of section 1988 does not explicitly enumerate those against whom an award of fees may be imposed, the overriding purpose of the statute—to

> In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985 and 1986 of this title, title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

encourage the vindication of civil rights by 'private attorneys general'—would be furthered by interpreting section 1988 to include discretionary fee awards against unsuccessful intervening defendants, regardless of whether the intervenor could actually be found to be a violator of federal law under 42 U.S.C. § 1983. *Id.* at 12–13; *see also Akron Center for Reproductive Health v. City of Akron,* 604 F.Supp. 1268 (N.D.Ohio 1984) (Section 1988 fees awarded in part against private intervenors who joined City of Akron in defending constitutionality of local abortion ordinance). We are unpersuaded that the facts of the instant case require us to adopt a different rule under Title VII: not only is the operative language of section 706(k) virtually identical to that used in section 1988, but the Supreme Court has previously observed that in considering awards of attorneys' fees, courts should consult related attorneys' fees statutes and case law. *See Hensley v. Eckerhart,* 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 1939 n. 7, 76 L.Ed.2d 40 (1983); *see also Zabkowicz v. West Bend Co.,* 789 F.2d 540, 549 n. 9 (7th Cir.1986). Moreover, other circuits applying Title VII's fee award provision have construed the statute to allow fee awards against "innocent" defendants and intervenors. *See e.g., Allen v. Terminal Transport Co., Inc.,* 486 F.Supp. 1195, 1202 (N.D.Ga.1980) (union defendant guilty of no discrimination held partially liable for Title VII attorneys' fees

due to opposition to consent decree affecting its members), *aff'd,* 653 F.2d 1016 (5th Cir.1981); *Moten v. Bricklayers, Masons and Plasterers,* 543 F.2d 224 (D.C.Cir.1976) (business association seeking unsuccessfully to intervene in appeal of a Title VII lawsuit assessed fees despite having engaged in no unlawful activity); *Thompson v. Sawyer,* 586 F.Supp. 635 (D.D.C.1984) (Title VII attorneys' fees imposed against non-party union for unsuccessful attempts at intervention to challenge relief attained by plaintiffs).[5]

IFFA raises a related argument which proceeds from the premise that, because its role in opposing the settlement agreement was more closely analogous to that of a plaintiff than to that of a defendant, it should be held liable for fees only if its intervention in the lawsuit can be deemed frivolous or unreasonable. The district court rejected the intervenor's "functional plaintiff" argument and we concur.

It is settled law that a prevailing Title VII plaintiff is presumptively entitled to fees. *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); *Zabkowicz,* 789 F.2d at 548. However, in *Christianburg Garment Co. v. E.E.O.C.,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), the Supreme Court held that a more rigorous standard of eligibility applies when prevailing Title VII defendants seek to recover fees from unsuccess-

**5.** IFFA cites *Richardson v. Alaska Airlines,* 750 F.2d 763 (9th Cir.1984), in support of its contention that only those found to be violators of federal law may be held liable for statutory attorneys' fees. *Richardson,* however, is clearly distinguishable from the case at bar. In *Richardson,* a pilots' union intervened unsuccessfully in a lawsuit brought under the Age Discrimination in Employment Act ("ADEA") to contest the fairness of a consent decree reached in the underlying litigation. The decree was ultimately approved by the district court and Richardson, the prevailing party in the original ADEA action, petitioned the court for statutory attorneys' fees against the union. Both the district court and, on appeal, the Ninth Circuit rejected Richardson's petition for fees but *not,* as IFFA would have us believe, because the union itself was innocent of any violation of federal law. Instead, Richardson was denied fees because the pertinent provision of the ADEA, 29 U.S.C. § 626(b), provides for an award of fees *only*

against an offending "employer." There is, of course, no such limiting language respecting those against whom fees may be imposed in section 706(k) of Title VII; thus, we are in no way precluded by *Richardson* from imposing fees against IFFA here.

Similarly, IFFA points to *Natural Resources Defense Council, Inc. v. Thomas,* 801 F.2d 457 (D.C.Cir.1986) (Scalia, J.) in which the District of Columbia Circuit refused to award attorneys' fees, pursuant to the attorney fee provision of the Clean Water Act, 33 U.S.C. § 1365(d), against an intervenor guilty of no violation of federal law. In affirming the district court's denial of fees against the intervenor in *Thomas,* the court specifically noted that the statutory language employed in section 1365(d) was neither textually similar to the language of 42 U.S.C. § 1988 (and by extension section 706(k) of Title VII) nor susceptible to the same pro-prevailing party interpretation that courts have accorded section 1988. *Id.* 801 F.2d at 461 n. 3.

ful plaintiffs. Specifically, the Court held that prevailing defendants are entitled to an award of fees only upon a finding that the plaintiff's action was "frivolous, unreasonable or without foundation." *Id.* at 421, 98 S.Ct. at 700. While the Supreme Court has never explicitly considered the standard applicable to a request for an award of fees against an unsuccessful intervenor, IFFA urges that because it intervened solely to assert the rights of its non-discriminating incumbent members, it should be viewed, in practical terms, as a plaintiff, and hence assessed attorneys' fees only if its opposition to the settlement was found to have been groundless.[6] In the instant case, the district court made no such finding.

The most recent exposition of IFFA's "functional plaintiff" argument appears to have been made in *Reeves v. Harrell*, 791 F.2d 1481 (11th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 880, 93 L.Ed.2d 834 (1987). In *Reeves,* a case apparently not brought to the district court's attention, white police officers intervened to challenge the constitutionality of a consent decree entered into by black police officers and the Sheriff's Office of Bibb County, Georgia. The black officers brought suit against the Sheriff's Office alleging racial discrimination in job assignments and promotions in violation of 42 U.S.C. §§ 1981 and 1983. The intervenors argued that the terms of the consent decree, which called for promotion of black officers on an equal basis with white officers, would in turn discriminate against them on the basis of race. Although the plaintiffs ultimately

prevailed over the intervenors' challenge to the consent decree, the Eleventh Circuit's decision on the issue of section 1988 fees expressly recognized the importance of the countervailing constitutional claims raised by the intervening white officers. Indeed, the court found the role of the intervenors in *Reeves* to be the functional equivalent to that of plaintiffs.[7] In so holding, the court suggested that such a result was required if defendants with good faith constitutional claims of their own were not to be deterred from litigating them for fear of statutory fee liability.[8] *Id.* at 1484; *see also Grano v. Barry,* 783 F.2d 1104, 1112 (D.C.Cir. 1986); *Kirkland v. New York State Department of Correctional Services,* 524 F.Supp. 1214, 1219 (S.D.N.Y.1981) ("[F]orcing intervenors to bring their constitutional claims only at the risk of becoming liable for their opponents' fees if they do not prevail may substantially deter such intervention ..."), *aff'd in part, rev'd in part on other grounds,* 520 F.2d 420 (2nd Cir. 1975). IFFA would have us characterize its posture in this case precisely as the Eleventh Circuit characterized the intervenors' position in *Reeves.* We decline to do so. Acceptance of a "functional plaintiff" exception to the rule favoring fee awards to prevailing Title VII plaintiffs, in our view, unnecessarily threatens to undermine what has come to be interpreted as a deliberate statutory presumption in favor of such awards to prevailing parties.

One need only look to the plain language of section 706(k) to discover that Congress intended only one class of litigants, prevail-

**6.** In *Charles v. Daley,* Nos. 86–1552 and 86–3137, slip op. (7th Cir. May 5, 1988) we explicitly declined to consider such an argument because it had been raised only in an *amicus* brief.

**7.** In the legislative colloquy preceding passage of 42 U.S.C. § 1988, Congress specifically recognized that the vindication of civil rights need not always be the task of a plaintiff: "In the large majority of cases the party or parties seeking to enforce such rights will be the plaintiff and/or plaintiff-intervenors. However, in the procedural posture of some cases, the parties seeking to enforce such rights may be the defendants or defendant-intervenors." S.Rep. No. 1011, 94th Cong., 2d Sess. at 4 n. 4, U.S.Code Cong. & Admin.News 1976, pp. 5908, 5912, n. 4.

While thus cognizant of the fact that defendants, too, may be in a position to assert important constitutional and statutory rights, nothing in section 1988's legislative history contradicts its plain language or suggests that any factor other than a party's success should be determinative of entitlement to or, conversely, liability for fees.

**8.** Although the Eleventh Circuit found the intervenors to be functionally equivalent to plaintiffs for purposes of liability for Title VII attorneys' fees, the court found their intervention to have been untimely and thus, in the end, susceptible to the imposition of fee liability under *Christianburg.*

ing parties, be eligible to recover attorneys' fees expended in Title VII litigation. Conversely, nowhere does section 706(k) expressly exclude any class of litigants from liability for such awards. While we are not unmindful that a literal interpretation of section 706(k) may, from time to time, result in the imposition of a fee award against a party whose sole involvement in a Title VII lawsuit is limited to an assertion of countervailing constitutional rights (*i.e.*, the intervenors in *Reeves*), we are nonetheless bound to apply the fee award provision of Title VII as it *is* written, not as it might have been written. *See e.g. United States v. American Trucking Associations, Inc.*, 310 U.S. 534, 543, 60 S.Ct. 1059, 1063–64, 84 L.Ed. 1345 (1940) (plain meaning of statute must be given effect unless doing so would result in "absurd" or "futile" results or results so unreasonable as to be plainly at variance with the policy of the legislation as a whole). Section 706(k) unequivocally endorses fee awards to prevailing Title VII parties; the plaintiffs in the case at bar prevailed and, consequently, are entitled to the fees awarded them by the district court.

IFFA contends that such narrow and syllogistic reasoning places undue importance upon the nominal alignment of the parties. For example, IFFA argues that had it waited until after approval of the settlement between the plaintiffs and TWA and then filed a separate action of its own contesting the validity of the agreement, it could not have been held liable for the fees incurred in connection with even a successful defense of the settlement by either the plaintiff class or TWA. Thus, IFFA asserts that it could have escaped section 706(k) liability merely by deciding to file its own independent lawsuit, one which would not have identified the union's interests with those of TWA in the underlying litigation. Assuming for the moment that a subsequent suit by IFFA would not be barred as untimely,[9] the fact that such a procedural loophole exists in Title VII's statutory scheme constitutes a flaw that must be addressed to Congress, not to the federal courts. *Cf. Kennedy v. Whitehurst*, 690 F.2d 951, 953 (D.C.Cir.1982) ("Arguments centering on the inequities caused by the absence of fee-shifting are properly addressed to the Congress and not to the courts."). The settlement phase of this case pitted the plaintiff class against intervening defendant IFFA; that IFFA now regrets having chosen to proceed as an intervenor does not relieve it from having to bear the financial consequences of that decision.[10]

Of even greater concern, however, is our belief that were we to adopt the "functional plaintiff" approach articulated in *Reeves* and advocated by IFFA, we might very well encourage intervenors, and ultimately defendants, in Title VII lawsuits to manufacture constitutionally-derived or statutorily-based defenses in an attempt to cloak themselves in the protective guise of functional plaintiffs, in effect rendering them immune from statutory fee liability except where their defenses are held to be completely without merit. *See Christianburg*, 434 U.S. at 421, 98 S.Ct. at 700. Congress

---

**9.** In *Marino v. Ortiz*, —— U.S. ——, 108 S.Ct. 586, 98 L.Ed.2d 629 (1988), the Supreme Court, by an equally divided panel, let stand a court of appeals decision affirming a district court's dismissal of a separate suit challenging a consent decree brought by nonparties to the underlying Title VII litigation. Failure by the nonparties to have joined the lawsuit earlier as either co-defendants or intervenors rendered their subsequent action attacking the consent decree an "impermissible collateral attack." *Marino v. Ortiz*, 806 F.2d 1144, 1146 (2d Cir.1986). It therefore remains unclear whether a subsequent collateral attack of a Title VII settlement by nonparties to the original lawsuit could be employed as a strategy by prospective intervenors to escape statutory fee liability.

**10.** The dissent characterizes as "unjust" our decision to impose fee liability upon IFFA, which admittedly was in no way responsible for TWA's breach of Title VII. Moreover, the dissent asserts that "[d]enying fee awards against ... intervenors will not significantly diminish plaintiffs' ability to attract counsel." The instant case, however, demonstrates the fallacy of the dissent's reasoning. Absent the possibility of recovering their attorneys' fees from IFFA, the prevailing plaintiffs would likely have been hard-pressed to come up with sufficient funds to attract counsel willing to defend their settlement before the district court, this court and, finally, the Supreme Court.

has authorized attorneys' fee awards in employment discrimination cases as an inducement to individuals—both lawyers and laymen alike—to bring lawsuits as private attorneys general and thereby aid in the enforcement of Title VII; acceptance by the courts of a "functional plaintiff" exception to Title VII fee liability could substantially undermine this crucial incentive to ordinary citizens to enforce this Nation's civil rights laws in circumstances where the government simply cannot. We are not inclined to look favorably upon such a potentially injurious exception to this long-standing legislative scheme.

*B. Special Circumstances*

■ Despite the general rule that prevailing parties in Title VII litigation are presumptively entitled to attorneys' fees, the Supreme Court has held that fees may be withheld where certain narrowly defined "special circumstances" are present that would render an award of fees unjust. *Albemarle Paper Co.*, 422 U.S. at 415, 95 S.Ct. at 2370; *Christianburg*, 434 U.S. at 417, 98 S.Ct. at 698. IFFA contends that two such "special circumstances" exist in the instant case. First, as the exclusive bargaining representative of its members, IFFA claims that it was obliged, under the judicially implied duty of fair representation, to intervene in the plaintiffs' Title VII lawsuit in an effort to set aside the parties' settlement agreement, which adversely affected the collectively-bargained for rights of its members. Such compulsory participation, argues IFFA, surely constitutes a special circumstance vitiating any liability for Title VII fees. In addition, IFFA posits as a second special circumstance the fact that the plaintiffs have already been awarded a generous and more than adequate sum—in excess of $1,250,000—as attorneys' fees in connection with the pre-settlement phase of this litigation and hence no further award of fees is necessary. We are persuaded that neither asserted "special circumstance" justifies withholding an award of fees to the plaintiffs and their counsel.

Initially, IFFA is mistaken when it claims that the duty of fair representation, first recognized by the Supreme Court in *Steele v. Louisville & Nashville R. Co.*, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944), *required* it to join this lawsuit to contest the validity of the settlement agreement reached between the plaintiffs and TWA. *Steele*, a case arising under the Railway Labor Act, held that "when Congress empowered unions to bargain exclusively for all employees in a particular bargaining unit, and thereby subordinated individual interests to the interests of the unit as a whole, it imposed on unions a correlative duty inseparable from the power of representation to exercise that authority fairly." *International Brotherhood of Electrical Workers v. Foust*, 442 U.S. 42, 46, 99 S.Ct. 2121, 2125, 60 L.Ed.2d 698 (1979). A union must thus represent fairly the interests of all bargaining-unit members during the negotiation, administration and enforcement of collective-bargaining agreements. *Conley v. Gibson*, 355 U.S. 41, 46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In particular, a union breaches its duty of fair representation *only* "when [its] conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith," as, for example, when it "arbitrarily ignore[s] a meritorious grievance or process[es] it in [a] perfunctory fashion." *Vaca v. Sipes*, 386 U.S. 171, 190–91, 87 S.Ct. 903, 916–17, 17 L.Ed.2d 842 (1967); *Foust*, 442 U.S. at 47, 99 S.Ct. at 2125.

■ Notwithstanding IFFA's assertions to the contrary, the duty of fair representation does not and never has been construed to guarantee that an employee or bargaining unit has an absolute right to have a grievance or other action brought on its behalf, *see Vaca*, 386 U.S. at 191, 87 S.Ct. at 917. *Graf v. Elgin, Joliet and Eastern Railway Co.*, 697 F.2d 771, 779 (7th Cir. 1983); *but see Richardson v. Alaska Airlines*, 750 F.2d 763 (9th Cir.1984) (imposition of fee award against intervening union "would only punish it for performing an act it was under a duty to do"). In fact, in a conscious effort to minimize federal judicial intervention in labor disputes, unions have consistently been accorded considera-

ble discretion in deciding whether and to what extent employee grievances should be prosecuted. *See Ford Motor Co. v. Huffman*, 345 U.S. 330, 337–38, 73 S.Ct. 681, 685–86, 97 L.Ed. 1048 (1953) ("A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents ..."); *see also Rupe v. Spector Freight Systems, Inc.*, 679 F.2d 685, 691 (7th Cir.1982); *Baker v. Armsted Industries, Inc.*, 656 F.2d 1245, 1250 (7th Cir.1981); *Peterson v. Kennedy*, 771 F.2d 1244, 1253 (9th Cir.1985); *Hart v. National Homes Corp.*, 668 F.2d 791, 794 n. 4 (5th Cir.1982); *N.L.R.B. v. American Postal Workers Union*, 618 F.2d 1249, 1255 (8th Cir.1980). Rather than *requiring* the initiation and pursuit of employee grievances by labor unions, the duty of fair representation merely sets forth standards to be adhered to by unions in determining not to prosecute or appeal grievances brought to them by their members. *See N.L.R.B. v. Local 139, International Union of Operating Engineers*, 796 F.2d 985, 992–93 (7th Cir.1986); *United Independent Flight Officers v. United Airlines*, 756 F.2d 1274, 1281 (7th Cir. 1985). IFFA was thus in no way compelled to intervene in this lawsuit and, accordingly, its decision to so proceed does not constitute a "special circumstance" abrogating its fee liability under section 706(k).

IFFA's second posited "special circumstance" also fails to persuade us that the district court's award of fees to the plaintiffs was in any way inappropriate. The union argues that because plaintiffs' counsel received an "enormous" fee for their work performed in connection with the pre-settlement phase of this lawsuit, any additional award of fees for counsel's post-settlement legal work constitutes a windfall. Not only are objections here to the size of the district court's pre-settlement fee award belated, but that fee award is entirely irrelevant for purposes of evaluating the district court's post-settlement fee award. While fee-shifting statutes are not designed "as a form of economic relief to improve the financial lot of attorneys," *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986), fee-shifting statutes are designed to reimburse plaintiffs for reasonable legal fees expended in certain types of lawsuits. IFFA has pointed to no errors in the district court's calculation of the plaintiffs' post-settlement fees (*i.e.*, number of attorney hours claimed or hourly rates sought); its only contention is that counsel were over-compensated by the district court's *earlier* award and thus any further award amounts to an abuse of discretion. The post-settlement proceedings in this case, directed at attacking the very essence of this lawsuit's successful and carefully crafted resolution, have already consumed in excess of two years of litigation and have included arguments before the district court, this court and the Supreme Court; accordingly, we find no abuse of discretion in the district court's decision to reimburse the plaintiffs fully for the fees they incurred during this important and procedurally separate phase of litigation.

## C. Enhancement of the "lodestar" figure

After calculating the lodestar sum to which counsel for Sub Class B were entitled from IFFA, the district court, employing a multiplier of 1.44, adjusted its fee award upward by $37,984.65 to account for the delay in time between the filing of Sub Class B's post-settlement fee petition in May 1982 and the date of the court's actual fee award in September 1986. We have noted on at least two previous occasions that enhancement of a fee award to compensate counsel for the time-value of money (another way of saying delay in payment), while by no means mandatory, is certainly within a district court's discretion. *See Ohio Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 776 F.2d 646, 660 (7th Cir.1985); *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 770 n. 6 (7th Cir.1982), *cert. denied*, 461 U.S. 956, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983). Moreover, in *Pennsylvania v. Delaware Valley Citizens' Council*, — U.S. —, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987), decided after oral argument in this case and holding that lodestar adjustments

based upon the risk of nonpayment are inappropriate, the Supreme Court observed, "[W]e do not suggest, however, that adjustments for delay are inconsistent with the typical fee-shifting statute." *Id.* at 3082.

■ In the instant case, the district court, through independent research, determined that a long-term Treasury Note purchased at about the time of Sub Class B's fee petition would have yielded its purchaser approximately 7½% per year, representing a multiplier of 1.44. This multiplier was, in turn, used to augment the district court's basic lodestar figure. Although a strong presumption exists that at the time a fee petition is filed the lodestar figure represents the "reasonable" fee to which section 706(k) entitles prevailing parties, *see e.g. Pennsylvania v. Delaware Valley Citizens' Council,* 478 U.S. 546, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986), the passage of time and the economic vicissitudes inherent therein are capable of eroding a fee award to such an extent that, in real terms, it no longer represents a "reasonable" approximation of the value of the legal services intended to be compensated. It is for this very reason that courts frequently award prejudgment interest. Regardless of the method employed (use of a multiplier or an award of prejudgment interest), an equitable adjustment of the lodestar to offset a five year delay in payment does not, in the circumstances presented by this case, constitute an abuse of discretion.[11] *Delaware Valley,* 107 S.Ct. at 3082; *cf. Michaels v. Michaels,* 767 F.2d 1185, 1204 (7th Cir.1985) ("[T]he decision to award prejudgment interest rests in the

sound discretion of the district court."), *cert. denied,* 474 U.S. 1057, 106 S.Ct. 797, 88 L.Ed.2d 774 (1986). Accordingly, the district court's award of $123,657.84 against IFFA for post-settlement fees is upheld in its entirety.

## III. CONCLUSION

We hold (i) that in an appropriate exercise of its discretion, the district court found IFFA liable for statutory attorneys' fees under section 706(k) of Title VII and (ii) that the district court's use of a multiplier to enhance Sub Class B's fee award was also not an abuse of discretion.

AFFIRMED.

MANION, Circuit Judge, dissenting.

To protect its members' jobs, the IFFA intervened in this litigation and presented a substantial, good-faith challenge to the settlement between plaintiffs and TWA. When the IFFA's challenge ultimately proved unsuccessful, the district court awarded attorneys' fees to plaintiffs as "prevailing parties" against the IFFA under the same standard applicable to defendants who have violated their employees' civil rights. The majority upholds this award. I respectfully dissent.[1]

In *Christianburg Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed. 2d 648 (1978), the Supreme Court made clear that the standards under which § 706(k) fees are awarded must be assessed in light of the policies underlying that statute. Under § 706(k), a prevailing plaintiff is presumptively entitled to fees from a defendant held liable on the merits

---

**11.** *But see Library of Congress v. Shaw,* 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986), wherein the Supreme Court held that, as distinct from a private defendant's liability for fees, the federal government's traditional immunity from an award of interest could not be circumvented by enhancing a lodestar to compensate for a delay in receiving payment. *Id.* 106 S.Ct. at 2965.

**1.** In *Charles v. Daley,* 846 F.2d 1057 (7th Cir.1988), this circuit recently held that under 42 U.S.C. § 1988 the plaintiffs were entitled to attorneys' fees as a "prevailing party" against inter-

vening defendants who were not liable on the merits of plaintiffs' 42 U.S.C. § 1983 claims. I dissented in that case on the ground that the plaintiffs could not be deemed to have "prevailed" against defendants who were not liable to the plaintiffs on the merits. Likewise, I believe that § 706(k) should not have been applied in this case because plaintiffs did not obtain any relief on the merits against the intervening union on their Title VII claims. Because § 706(k) and 42 U.S.C. § 1988 have the same operative language concerning prevailing parties, however, *Charles* requires that plaintiffs be treated as prevailing parties against the IFFA.

unless special circumstances would render awarding fees unjust. *Id.* 434 U.S. at 416–17, 98 S.Ct. at 697–98. A prevailing defendant, however, is not allowed to recover fees from a plaintiff unless "the plaintiff's action was frivolous, unreasonable, or without foundation...." *Id.* at 421, 98 S.Ct. at 700. The reason for this distinction is not contained in the statute's express language. The statute refers only to "prevailing parties." The Supreme Court, however, set forth three reasons for distinguishing between defendants and plaintiffs. First, § 706(k) sought to facilitate the enforcement of the civil rights laws through "private attorneys general." *Id.* at 416–18, 98 S.Ct. at 698–99. Second, granting prevailing defendants attorneys' fees as a matter of course would act as a significant disincentive for plaintiffs to bring civil rights suits. *Id.* at 421–22, 98 S.Ct. at 700–01. Third, "when a district court awards counsel fees to a prevailing plaintiff, it is awarding them against a violator of federal law." *Id.* at 418, 98 S.Ct. at 699.

In this case, the IFFA intervened to assert the federal collective bargaining rights of the incumbent employees. In addition, neither the IFFA nor the incumbent employees were in any way responsible for the "no-motherhood" policy that spawned the underlying litigation and ultimate settlement. In such a situation, the application of the *Christianburg Garment* policies warrants treating the intervenors as plaintiffs for attorneys' fees purposes. *See Reeves v. Harrell,* 791 F.2d 1481, 1484 (11th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 880, 93 L.Ed.2d 834 (1987). As there is no dispute that the IFFA presented a substantial, good-faith challenge to the settlement, the assessment of fees against it was inappropriate. Moreover, regardless of how the IFFA's posture in this litigation is characterized, the circumstances of this case render the award of fees unjust.

In the settlement negotiations between plaintiffs and TWA, neither side had a strong interest in protecting the jobs of TWA's incumbent employees. Plaintiffs obviously had a strong interest in regaining their old jobs. TWA's primary interest was in settling the lawsuit. TWA was going to have a full complement of flight attendants whether they came from the plaintiffs' or incumbent employees' ranks. While the IFFA may not have had a legal obligation to intervene, it certainly would have been unusual for the IFFA to simply ignore a settlement that substantially altered its contract with TWA and the job security of its members. In fact, this circuit dismissed the incumbent employees' predecessor union as the plaintiffs' class representative specifically because the union's interest in representing the collective bargaining rights of the incumbent employees conflicted with its position as class representative. *See Air Line Stewards and Stewardesses Ass'n, Local 550 v. American Airlines, Inc.,* 490 F.2d 636, 639–42 (7th Cir.1973). The fact that the IFFA did what its members elected it to do and this circuit expected it to do, that is, represent the interests of incumbent employees, is not something that should subject it to Title VII attorneys' fees.

Moreover, the policy of encouraging "private attorneys general" to enforce Title VII does not warrant imposing fees against the IFFA. Section 706(k) seeks to encourage plaintiffs to bring suits against defendants who violate federal law. This policy has attenuated, if any, relevance to intervenors like the IFFA who did not violate Title VII. In addition, denying fee awards against such intervenors will not significantly diminish plaintiffs' ability to attract counsel. This is aptly demonstrated in the present case where plaintiffs' counsel has already received more than $1,250,000 from the $3,000,000 settlement.

Rather than encouraging persons to act as "private attorneys general," the majority's construction of § 706(k) will have quite the opposite effect. Title VII lawsuits often affect many employees other than the named plaintiffs. The settlement of a Title VII suit or the granting of remedies by a court may leave some employees in a less desirable employment position or out of a job altogether. Many of these affected employees will have substantial claims that the settlement or remedies violate their

own rights under a collective bargaining agreement, Title VII, or even the Constitution. The just resolution of these cases requires the full participation of everyone involved. Mechanically assessing attorneys' fees against intervening employees who did not violate anybody's rights and who are not fortunate enough to posture themselves as "plaintiffs," will ensure that in many cases only two sides will be heard in a multi-sided dispute.

I would reverse the district court's award of attorneys' fees.